CHARLES M. THAYER, administrator, & another, vs. ELLEN
F. PRESSEY, administratrix, & others.

Worcester.    October 3, 1899. — January 25, 1900.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & LORING, JJ.

Trust — Patent — Assignment — United States Statute — "Legal
Representatives" — Contract — Equity — Demurrer.

A., the owner of a patent, assigned it, together with all his right and title in and to
any claims for past infringement thereof, to B., who prosecuted against certain
agents of the United States a suit in his own name in the Circuit Court and ob-
tained a decree on the merits ordering an accounting, no question having been
raised as to the validity of his title under the assignment. Afterwards A. ex-
ecuted a contract with B. and C., an attorney, to share equally with them the
sum realized from the prosecution of the claim after deducting all expenses
incurred in such prosecution. A. died, and his daughter, who was appointed
administratrix of his estate, contracted with B. and C. that if they would con-
tinue to prosecute the claim she would transfer the treasury warrant for the
payment of the proceeds as soon as it should be issued, to joint trustees to
collect the same and make distribution. Subsequently an act of Congress was
enacted, authorizing the Secretary of the Treasury to pay to the "legal repre-
sentatives" of A. a certain sum as "compensation in full for the use by the
United States" of the patented invention, "as appears in the findings of law
and of facts made by the United States Circuit Court" in the suit above named.
B.'s administrator and C. brought a bill in equity against A.'s administratrix
to enforce a trust in this money. Held, on demurrer, that the bill could be
maintained.

In a bill in equity, by the assignee of a patent and of all right and title in and to
any claims for past infringement thereof, to enforce a trust in a sum of money
directed by a statute of the United States to be paid for such infringement, it is
not necessary to annex a copy of the assignment nor to state the substance of
its provisions in detail, but it is sufficient if the plaintiff states that he is the
owner of an assignment in writing from the patentee of all his right, title, and
interest in and to any and all claims for past infringement, and shows that the
fund was appropriated by Congress as compensation for an infringement of the
patent.

BILL IN EQUITY, filed in the Superior Court, by Charles M.
Thayer, administrator of the estate of Sullivan Forehand, and
Baxter E. Perry, against Ellen F. Pressey, as administratrix of
the estate of John C. Howe and in her personal capacity, the
Worcester National Bank, and George F. Blake, alleging the
following facts.

John C. Howe, late of Worcester, deceased, was the patentee named in certain letters patent of the United States, dated August 16, 1864, for improvements in cartridges.

On or about May 26, 1881, Sullivan Forehand and Henry C. Wadsworth, being then the owners by assignments in writing of all Howe's interest in the patent, and all his right, title, and interest in and to any and all claims for past infringement thereof, instituted in their own name proceedings in equity in the Circuit Court of the United States for the District of Connecticut, against certain officers and agents of the United States, who had purported to act in the premises as such, for infringement of the letters patent, and the suit was defended by the United States through their attorney for that district, and in the defence no objection was made to the complainants' claim as being held by them by assignment from Howe, but the case was tried on its merits, and the court held that the patent was valid and had been infringed, and ordered a decree in favor of the complainants for an accounting for the infringement charged.

After such decision, which was rendered on February 10, 1883, Forehand and Wadsworth presented to the Congress of the United States their memorial, setting forth the facts hereinbefore recited, and praying that just pecuniary compensation be made to them as assignees of Howe for all past infringement of the patent by the United States, or its officers or agents, and thereupon the claim of Forehand and Wadsworth was transmitted to the Court of Claims by the committee on claims of the Senate, on January 10, 1884, under the provisions of the U. S. St. of March 3, 1883. Under this reference the Court of Claims, upon a bill filed by Forehand and Wadsworth as such assignees, investigated all the facts material to the claim made by the memorial, including the validity of the patent, the infringement by the United States, and the proper pecuniary allowance for such infringement, covering the whole time from the grant of the patent, and reported to the committee on claims of the Senate on April 26, 1889, that a reasonable royalty for the United States to pay would be $66,907. In this litigation the defence was conducted by the United States through the Solicitor General, and lasted nearly five years ; and in the successful prosecution of the claim before the courts and in Congress the plaintiff

Perry lawfully expended more than $23,000, and Forehand lawfully expended more than $9,000, for which they have never been reimbursed.

On or about March 5, 1884, Wadsworth assigned to the defendant Blake all his right, title, and interest, legal and equitable, in and to the claim against the United States, as collateral security for the payment of Wadsworth's note, of even date therewith, for $5,000, which note has not been paid by Wadsworth.

On or about April 14, 1885, Forehand and Wadsworth gave to the plaintiff Perry a power of attorney, authorizing him to prosecute to final results in the Court of Claims and in Congress the claim against the United States before described. Wadsworth died while the claim was pending and before the passage of the act of Congress hereinafter referred to, and Forehand as surviving partner became the sole owner of the legal interest therein of Forehand and Wadsworth.

On or about November 8, 1889, Forehand and Perry entered into an agreement in writing with Howe, whereby each became entitled to one third of such sum as might thereafter be received from the United States pursuant to the prayer of the memorial, after deduction from such sum of the amount of certain expenses theretofore lawfully incurred by Forehand and Perry, in the litigation, and otherwise in establishing and furthering the claim, such expenses amounting to $25,500 and such further expenses, not exceeding $1,000, as might properly be incurred in the premises.

On August 18, 1892, Howe died intestate, leaving no widow, and leaving as his sole heir and next of kin a daughter, the defendant Pressey. On October 18, 1892, she was duly appointed the administratrix of the estate of Howe, and duly qualified as such.

In April, 1898, pursuant to the prayer of the memorial and to the decision and report of the Court of Claims, an act of Congress was passed, as follows:

" Be it enacted, . . . That the Secretary of the Treasury be and he is hereby authorized and directed to pay to the legal representatives of John C. Howe, deceased, sixty-six thousand nine hundred and seven dollars, out of any money in the Treasury not otherwise appropriated, the same being compensation

in full for the use by the United States, to wit: in sixty-six million nine hundred and seven thousand three hundred and thirteen cup-anvil cartridges, of the invention secured to John C. Howe and his assigns by letters patent of the United States issued to him August sixteen, eighteen hundred and sixty-four, and number forty-three thousand eight hundred and fifty-one, during the entire term of said letters patent, as appears in the findings of law and of fact made by the United States circuit court for the district of Connecticut, in the case of Forehand and others versus Porter, reported in volume fifteen, of the Federal Reporter, at page two hundred and fifty-six, and as further appears in the findings of fact made by the Court of Claims, after full testimony and full hearing in Congressional case numbered one, entitled Forehand and others versus The United States, heard on reference of the matter to said Court of Claims by the Committee on Claims of the Senate under and pursuant to the Act of March three, eighteen hundred and eighty-three, commonly known as the Bowman Act, said findings of fact having been certified to the Committee on Claims of the Senate by said court on the twenty-sixth day of April, eighteen hundred and eighty-nine."

The act directed the payment to be made to the legal representatives of Howe, because he was the holder of the legal title to the fund and the plaintiff was but the holder of the beneficial or equitable estate therein.

The passage of the act was lawfully furthered and procured by Forehand and Perry through counsel employed by them for that purpose; and pending the proceedings thereon in Congress, and prior to the passage thereof, it was agreed by Pressey by a writing, dated June 15, 1894, which referred to the contract of November 8, 1889, that if Forehand and Perry would continue to prosecute the claim against the United States she would transfer the treasury warrant for the payment of the proceeds as soon as it should be issued, to joint trustees to collect the same and make distribution according to this agreement; and the payment was received by the defendant Pressey upon those terms; and it was then also agreed between them that the only sum to be deducted from the fund for expenses mentioned in the contract referred to should be the sum of $25,500.

Shortly after the passage of the act of Congress, the amount specified therein was paid by the United States to the defendant Pressey, as such administratrix, as and for the compensation theretofore prayed for by Forehand and Wadsworth.

The defendant Pressey, upon receiving the amount of such payment, deposited the same in her name with the defendant bank, and the same still remains there to her credit, except that by order of court there has been paid out to her the sum of $650, and to counsel for professional services rendered by him in obtaining the passage of the act the sum of $10,102.

The fund is in the hands of the defendant Pressey charged with a trust in favor of the plaintiffs to the extent of $25,500 thereof and two thirds of the balance, namely, to the extent of $53,106, less the payments by order of court, leaving $42,352.

After the deposit with the defendant bank, Forehand died intestate, and the plaintiff Thayer was duly appointed and qualified as administrator of his estate.

The amount of $42,352 belongs to the plaintiffs in the following proportions: To the plaintiff Thayer, administrator, the amount of about $15,070, and to the plaintiff Perry about $27,252.66, the difference being due to the fact of the difference in the amounts of payments of the expenses by Forehand and Perry respectively, and the interest of Perry in the fund is further subject to a trust in favor of Blake to pay therefrom to him, for money lent to Wadsworth, the sum of $5,000 with interest at ten per cent from March 5, 1884.

The defendant Pressey contends that the whole amount of the fund is assets of the estate of Howe, and denies that either Thayer, administrator, or Perry or any person claiming under either of them has title to any part thereof.

Upon the receipt of the fund by the defendant, Perry and Forehand duly demanded of her payment of their share thereof, but she refused to pay the same or any part thereof, except the payments by order of court.

The prayer of the bill was that it might be decreed that the defendant Pressey holds in trust for the plaintiffs so much of the fund as amounts to $42,352.66, in the proportions hereinbefore set forth; that she be ordered to pay the same to the plaintiffs respectively, in such proportions, with interest thereon

from the date of the receipt of the fund by her; and for an injunction.

The defendant Pressey demurred to the bill, upon the grounds, among others, that no copy of the assignment was set forth; that the proceedings in the Circuit Court and Court of Claims were, so far as the defendant was concerned, *res inter alios*, and neither she nor her intestate was a party to or bound or affected by such proceedings; and the same was true as to the memorial to Congress and the action taken thereon.; that as to the claim to reimbursement for expenditures made in the litigation, neither the defendant nor her intestate was a party to such litigation or expenditures or bound or affected thereby; that the act of Congress directs that the fund be paid to the legal representatives of Howe, and they were exclusively entitled to the fund; that the assignment, the contract of November 8, 1889, and the agreement made by the defendant on June .15, 1894, were all void by the provisions of the statutes of the United States; and that the defendant had no authority as administratrix to make such an agreement.

Hearing upon the bill and demurrer, before *Fessenden*, J., who, at the request of the parties, reserved the case for the consideration of this court. If the demurrer was sustained without amendment allowed, the bill was to be dismissed; otherwise, such order was to be made as justice and equity might require.

*H. Parker,* (*C. C. Milton & C. Bullock* with him,) for the defendant Pressey.

*C. Browne & C. M. Thayer,* (*G. S. Taft* with them,) for the plaintiffs.

KNOWLTON, J.   This case is reserved for our consideration on the bill and a demurrer which goes to the merits of the whole case.   Ellen F. Pressey, hereinafter called the defendant, as she alone defends on the issues now raised, is the daughter and sole heir of John C. Howe, late of Worcester, deceased, and is the duly appointed administratrix of his.estate.   As his legal representative she was paid about $67,000 by the treasurer of the United States under an act of Congress passed in April, 1898, which is as follows: " Be it enacted, . . . That the Secretary of the Treasury be and he is hereby authorized and directed to pay to the legal representatives of John C. Howe, deceased, sixty-six

thousand nine hundred and seven dollars out of any money in the Treasury not otherwise appropriated, the same being compensation in full for the use by the United States, to wit: in sixty-six million nine hundred and seven thousand three hundred and thirteen cup-anvil cartridges, of the invention secured to John C. Howe and his assigns by letters patent of the United States issued to him August sixteen, eighteen hundred and sixty-four, and numbered forty-three thousand eight hundred and fifty-one, during the entire term of said letters patent, as appears in the findings of law and of fact made by the United States circuit court for the district of Connecticut in the case of Forehand and others versus Porter, reported in volume fifteen of the Federal Reporter at page two hundred and fifty-six, and as further appears in the findings of fact made by the Court of Claims, after full testimony and full hearing in Congressional case numbered one, entitled Forehand and others versus The United States, heard on reference of the matter to said Court of Claims by the Committee on Claims of the Senate, under and pursuant to the Act of March three, eighteen hundred and eighty-three, commonly known as the Bowman Act, said findings of fact having been certified to the Committee on Claims of the Senate by said court on the twenty-sixth day of April, eighteen hundred and eighty-nine." This money, less $10,752 paid by order of the court on account of expenses, is on deposit to her credit in the defendant bank, and the plaintiffs contend that, by virtue of an assignment and certain contracts, it is charged with a trust in their favor for the sum of $25,500 expended in preliminary litigation and in prosecuting the claim before Congress, and also for two thirds of the balance as the share to which they are entitled under the assignment and contracts, less the amount of said payments made by order of the court, making the amount of their present claim $42,352. The last of these contracts was executed on June 15, 1894, by the defendant herself. Her father died on August 13, 1892, and she was appointed administratrix on October 18, 1892. The assignment and contracts set out in the bill, with the accompanying averments, present a case of strong equities in favor of the plaintiffs, unless the existence of the statutes and decisions on which the defendant relies so affects their conduct as to pre-

vent their recovery. The defendant contends that the assignment and contracts under which the plaintiffs claim are void under the Revised Statutes of the United States, § 3477, which is as follows: "All transfers and assignments made of any claim upon the United States, or any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void unless they are freely made and executed in the presence of at least two attesting witnesses after the allowance of such a claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof. Such transfers, assignments and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same." This statute is a re-enactment from the U. S. St. of February 26, 1853, which is entitled "An Act to prevent frauds upon the treasury of the United States," and which has frequently been considered by the Supreme Court of the United States. 10 U. S. Sts. at Large, c. 81. In *Spofford* v. *Kirk*, 97 U. S. 484, it was held that a duly accepted order given by the holder of a claim against the United States in favor of a third person, upon one whom he had employed to collect the claim, and afterwards transferred to a purchaser for value, who took it in good faith, could not be enforced against the drawer upon the fund. Mr. Justice Strong, in giving the opinion, said: "It would seem to be impossible to use language more comprehensive than this. It embraces alike legal and equitable assignments. It includes powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof. It strikes at every derivative interest, in whatever form acquired, and incapacitates every claimant upon the government from creating an interest in the claim in any other than himself." Notwithstanding this strong general lan-

guage, the court has since recognized exceptions to its universal inclusiveness. In *Goodman* v. *Niblack*, 102 U. S. 556, 559, 560, it is said that the mischiefs intended to be remedied by the statutes are, " First, the danger that the rights of the government might be embarrassed by having to deal with several persons instead of one, and by the introduction of a party who was a stranger to the original transaction. Second, that by a transfer of such a claim against the government to one or more persons not originally interested in it, the way might be conveniently opened to such improper influences in prosecuting the claim before the departments, the courts, or the Congress, as desperate cases, when the reward is contingent on success, so often suggest." The court then says that " both these considerations, as well as a careful examination of the statute, leave no doubt that its sole purpose was to protect the government, and not the parties to the assignment." It was decided in this case that a voluntary assignment of a claim against the United States with other property by an insolvent debtor, with preferences, was valid, notwithstanding the statute. It had previously been held in *Erwin* v. *United States*, 97 U. S. 392, that the statute did not apply to assignments by operation of law, and that such claims passed by an assignment in bankruptcy. See *Price* v. *Forrest*, 173 U. S. 410.

The doctrine that " the object of the statute was to protect the government and not the claimant, and to prevent frauds upon the treasury " has been strongly stated in numerous other cases. See *Freedman's Saving & Trust Co.* v. *Shepherd*, 127 U. S. 494 ; *Bailey* v. *United States*, 109 U. S. 432; *Hobbs* v. *McLean*, 117 U. S. 567. Accordingly, while the government may always disregard an assignment of a claim against it, there is a class of cases in which claims against the United States have been included in assignments and transfers and have passed from the assignor to the assignee with full effect between the parties, as incident to the general subject of the contract. *Hobbs* v. *McLean*, 117 U. S. 567, was a case where one having a contract with the United States to furnish army supplies, made an agreement with others whereby they were to become partners with him and have a share in the money to be received from the United States. It was held that such a transfer of an interest in the claim was valid

as between the parties and was not within the statute.    In *Freed-man's Saving & Trust Co.* v. *Shepherd*, 127 U. S. 494, the United States government was a lessee of real estate and liable to pay rent, and on an assignment of the lease and the rent under it, it was held that there was nothing in this statute which invalidated the transaction as between the parties, the government having chosen to recognize the assignment.    In *Barrow* v. *Milliken*, 74 Fed. Rep. 612, it was decided by the Circuit Court of Appeals, while considering this statute, that a sugar planter might mort-gage and pledge his crop and his claim for a bounty to be received from the United States, in such a way as to be effectual against himself and others claiming under him, although the claim had not been presented and allowed.    The plaintiff in *Jernegan* v. *Osborn*, 155 Mass. 207, was the owner of one six-teenth part of the ship Europa, whose owners sustained losses by reason of services rendered by the ship in assisting in the rescue of nine hundred seamen in the Arctic seas.    Afterwards he sold his interest in the ship to the managing owner, and still later he sold to the same person all his interest in the voyage in which the losses occurred, including " any claims by the owners of said Europa against the United States government."    After-wards, by an act of Congress, an award was made to the owners of the vessel in full compensation for these losses, and it was held that the plaintiff's share in the award passed to the defend-ant under the assignment, and that the statute did not render the assignment void as between the parties.    In all these cases there was something more than a naked assignment of a claim for the purpose of collection and enjoyment, and in each of them the claim, as a part of the transaction, or as an incident, was of substantial importance.    In only one case, so far as we know, where the assignment of the claim was an incident to a larger transaction, has it been said that the assignment was invalid as between the parties.    In that case (*St. Paul & Duluth Railroad* v. *United States*, 112 U. S. 733) another ground for the decision is stated which is conclusive, namely, that there is no descrip-tion in the conveyance sufficient to include the claim, and it is then said that if there were, the assignment of it would be invalid under the Revised Statutes of the United States, § 3477. The question whether it should make a difference that the

assignment was a mere incident to the conveyance of the principal subject to which the conveyance related, apparently was not considered. In one of the latest cases in which the statute has been considered, the present Chief Justice of the United States speaks of " the intent of Congress that an assignment of naked claims against the government for the purpose of suit, or in view of litigation or otherwise, should not be countenanced." In the next sentence he treats the statute as analogous to the rule against maintenance and champerty. *Hager* v. *Swayne,* 149 U. S. 242, 247. In *Marshall* v. *Baltimore & Ohio Railroad,* 16 How. 314, 336, Mr. Justice Grier says of the statute, " This act annuls all champertous contracts with agents of private claims."

Another exception to the broadest application of this statute has been established. It has repeatedly been held that if the government has recognized the validity of an assignment which otherwise would be void under the act, the assignor is bound by the recognition which in terms he authorized. *Bailey* v. *United States,* 109 U. S. 432. *Freedman's Saving & Trust Co.* v. *Shepherd,* 127 U. S. 494. *Goodman* v. *Niblack,* 102 U. S. 556. The late case of *Ball* v. *Halsell,* 161 U. S. 72, does not change the doctrine of any of the cases above cited. The decision rests upon a different statute from that in question, namely, the U. S. St. of March 3, 1891, which applied directly to the claim then before the court, and was held to be constitutional. The reference to the former statute was principally to show how the legislation had grown up, and what were the inducements to the enactment of the later act.

In the present case Forehand, the plaintiff Thayer's intestate, and his partner Wadsworth, who has since deceased, took from Howe, the defendant's intestate, an assignment of his patent, together with all his rights and claims for past infringements of it. The claim against the United States for an infringement was one in which they would have an interest as purchasers of the patent. The establishment of the claim that the manufacture of cartridges by the United States was an infringement, might have an important effect upon the value of the patent in reference to existing conditions, as well as to a possible renewal of it. They prosecuted a suit in their own names in the Circuit Court of the United States, and obtained a

decree upon the merits ordering an accounting, no question having been raised by the representatives of the United States as to the validity of their title under the assignment. So far as appears upon the bill, their title to the claim against the United States seems to be similar to those in the cases above cited, where there was not an assignment of a naked claim for the purpose of collection, but a conveyance of substantive property with which the claim was connected and to which it was in a sense incident. So, too, their claim was similar to others above referred to, in having been recognized by the government. Throughout the litigation in the Circuit Court of the United States the government, by its representatives, assumed that their title was good, and contested the claim only on the question whether the manufacture was an infringement of the patent. Moreover, the act of Congress first above quoted and the averments of the bill show that the money was given upon proceedings pending before Congress in the names of the assignees, and purporting to be for their benefit, and that the appropriation was in compensation for the use shown in the case in the Circuit Court of the United States prosecuted by the assignees. The findings of law and of facts in two cases prosecuted in the names of the assignees are adopted into the statute and made the foundation of the appropriation. The term "legal representatives," used in the act, ordinarily means executors or administrators; but it is a broad expression which may refer to heirs, or to others who represent rights by succession under a conveyance. See *Lodge* v. *Weld*, 139 Mass. 499, 504. The power of sale in a common form of mortgage in this Commonwealth is to "the mortgagee and his legal representatives," which certainly gives the authority to assignees of the mortgage as well as to executors or administrators. It is to be noticed in the present case that when the statute was passed, the defendant had for a long time been the sole administratrix of John C. Howe's estate, and this must be presumed to have been known when the bill was enacted. In view of the nature of the assignment from Howe, as stated in the bill, and in view of the recognition of the assignees by the representatives of the government, we are of opinion that the statute is not to be interpreted as giving the money to the defendant to be wholly

distributed as a part of her father's estate, but to be disposed of according to the interests then existing under the assignment of the patent and the claims for an infringement of it, and under the contract which Howe had subsequently made in reference thereto. There is the more reason for so holding, inasmuch as the defendant, after her father's death, recognized the assignment and this contract in the most formal way, before the act of Congress was passed, and solemnly contracted that if the plaintiffs would continue to prosecute the claim she would transfer the treasury warrant for the payment of the proceeds as soon as it should be issued, to joint trustees, to collect the same and make distribution. Neither this contract which she made, nor the last contract of her father which she adopted, purported to be an assignment. He had previously made as effectual an assignment as he was capable of making.

It is contended in her behalf that she had no authority as administratrix to make such a contract. There is strong ground for an argument that the relation of her father's estate to the claim under the assignment and the proceedings in court and before Congress and under the contract of November 8, 1889, recognizing the title of the assignees, was such as to make it proper for her to contract as she did. Whether as administratrix she could bind the estate in this way or not, so far as she undertook to bind herself and her interest as sole heir at law, it would be most inequitable to permit her to repudiate her agreement.

All that we have said is applicable to the claim of Thayer, administrator of Forehand, who with Wadsworth was one of the two original assignees. The bill avers that since the death of Wadsworth Forehand has been the owner of his legal interest as surviving partner, and that Thayer as administrator represents the entire claim, except as it is affected by the assignment from Wadsworth to Blake as collateral security for the payment of a note for $5,000, and by the agreement with the plaintiff Perry, and the subsequent agreements with Howe and with the defendant. That the equitable claims under the original assignment to Forehand and Wadsworth should be held to be good under the act of Congress we feel very certain. In regard to the claim of Perry we have more doubt. Perhaps we may presume that Congress, when it

directed payment to the legal representatives of Howe and referred to the claims of the assignees, was aware of the facts in regard to the title, and that the act was passed in reference to Howe's contract of November 8, 1889, and the subsequent contract of the defendant. Congress was legislating in regard to a title held by legal representatives, and it is fair to assume that it thoroughly understood the subject of the legislation. In that view, whether the original contract with Perry was valid or not, inasmuch as these later contracts had reference to a claim already assigned by Howe to Forehand and Wadsworth under an assignment which appears to have been proper, and to have been recognized by the government, perhaps we properly may infer an intent on the part of Congress that the money should be held and distributed by the defendant under these contracts. Seemingly, by agreement of the plaintiffs, Perry is joined as a plaintiff with the administrator of Forehand, whose title we have no hesitation in upholding, and there is no demurrer to his claim, except that which is included in the demurrer to the whole title of the plaintiffs. Apparently it will make no difference to the defendant whether the suit proceeds in the names of both plaintiffs or in the name of Thayer, administrator, alone. This part of the case has not been argued by the defendant, and we do not know that she cares to object to Perry's claim, if the only effect of the objection would be to leave his share in the hands of Thayer. These last contracts seem to have been advantageous to Howe's estate, and as their validity is assumed by all the other parties, and as there is no demurrer applying particularly to Perry's title, we are not inclined to sustain the defendant's demurrer on account of Perry's claim under them, or on account of the assignment to Blake.

The defendant demurs to the bill because no copy of the original assignments is annexed and no sufficient statement of their contents is set out. We are of opinion that the plaintiffs were not bound to annex a copy of the assignments nor to state the substance of their provisions in detail. They were bound to state all the substantive facts on which their right to relief depends, among which is their title to a share in the fund. This they sufficiently set forth when they state that they are the owners by assignments in writing from the patentee of all

his right, title, and interest in and to any and all claims for past infringement, and show that the fund was appropriated by Congress as compensation for an infringement of the patent. See Story, Eq. Pl. §§ 257 *et seq.*; 6 Encyc. of Pl. & Pr. 287, and notes.        *Demurrer overruled.*