## BALL *v.* HALSELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 471. Submitted December 18, 1895. — Decided March 2, 1896.

By the act of February 26, 1853, c. 81, § 1, (Rev. Stat. § 3477,) every specific assignment, in whatever form, of any claim against the United States, under a statute or treaty, whether to be presented to one of the execu-

Statement of the Case.

tive departments, or to be prosecuted in the Court of Claims, is void, unless assented to by the United States.

A contract, by which the owner of a claim against the United States for Indian depredations appointed an attorney to receive and give acquittances for one half of the money which the attorney might recover of the United States upon that claim, will not, although the attorney has obtained from the Secretary of the Interior a recommendation for the payment of a certain sum upon that claim, but for the payment of which Congress has made no appropriation, support an action by the attorney against the principal for part of a less sum recovered upon that claim from the United States in the Court of Claims under the subsequent act of March 3, 1891, c. 358, out of which the attorney has been allowed and paid less than twenty per cent of that sum, as provided by that act.

THIS was an action brought August 18, 1893, in the Circuit Court of the United States for the Northern District of Texas, by Thomas Ball, a citizen of the State of Virginia, against Julia F. Halsell, a citizen of the State of Texas, residing in that district, and the widow, legatee and executrix of J. G. Halsell, upon a written contract made with the plaintiff by said Halsell in his lifetime, in these words:

"We, the undersigned parties of the first part, do hereby constitute and appoint Thomas Ball our lawful attorney to receive, and to make, sign and give all necessary acquittances and receipts for, one half of all money which may be received by him as our attorney at law, for prosecuting claims against the United States Government, on account of the depredations of the Comanche and Kiowa Indians on our property of horses, mules and cattle in the State of Texas. Said one half being the amount agreed by us to pay him of all that he may recover of said government for said depredations.

"Given under our hands this 22d day of May, A.D. 1874.

"J. G. Halsell."

The signature of the contract was admitted. The other material facts, as alleged in the petition, and found by the court, (to which the parties, waiving a trial by jury, submitted the case,) were as follows:

The plaintiff presented to the Department of the Interior in March, 1875, a claim of Halsell, amounting to $24,860, for such depredations, and prosecuted it before the department,

and the department recommended payment of the sum of $19,625 to Halsell for such depredations. No appropriation was made by Congress to pay the sum so awarded. On March 6, 1891, after the passage by Congress of the act of March 3, 1891, c. 538, entitled "An act to provide for the adjudication and payment of claims arising from Indian depredations," Ball, acting under his power of attorney, brought a suit in behalf of Halsell, under the provisions of that act, in the Court of Claims, to recover the sum so awarded by the Department of the Interior; and after the death of Halsell, and the substitution of his executrix as claimant in his stead, judgment was rendered for the sum of $17,720, in her favor, and against the United States and the Kiowa and Comanche tribes of Indians; and by the terms of that judgment the sum of $1500 was awarded to Ball as the claimant's attorney. Soon afterwards the United States paid this sum to him, and paid the amount of the judgment for $17,720, less this sum, to the executrix.

In the present suit, Ball claimed to be entitled to recover, under the contract aforesaid, one half of said amount of $17,720, less the sum of $1500 paid him.

The defendant, in her answer, alleged that "the contract described in the plaintiff's petition, if any such was ever made, was declared void by the ninth section of the act of March 3, 1891, of the Congress of the United States, entitled 'An act to provide for the adjudication and payment of claims arising from Indian depredations;' and by the authority and directions of the same section, an allowance, and all that said act permitted to be paid the plaintiff under his said employment, was made to the plaintiff in the judgment rendered by said Court of Claims in favor of this defendant, and was paid to him out of the Treasury of the United States."

Upon the facts above stated, the Circuit Court made the following conclusion of law: "The court being of opinion that said contract is rendered nugatory, and the provision therein made for compensation for said attorney, Thomas Ball, is superseded by the ninth section of the act of March 3, 1891, and being of opinion that said contract is not en

forceable, and that said statute above referred to fixes and provides for the payment of all the compensation which attorneys prosecuting the claim under said act are entitled to receive, judgment is rendered for the defendant." The plaintiff sued out this writ of error.

*Mr. John J. Weed* for plaintiff in error.

I. The contract between the plaintiff in error and Halsell was a legal contract, and, having been fully performed by the plaintiff in error, he was entitled to be paid the compensation therein stipulated to be paid upon such performance.

Contracts, which provide for the payment of compensation to an attorney for services rendered by him in the prosecution of a claim against the United States, which are contingent upon the successful prosecution of such claim, and provide for payment of a part of the amount collected to the attorney collecting the claim, have been sanctioned as legal and enforced in this court. *Wylie* v. *Coxe*, 15 How. 416; *Wright* v. *Tebbitts*, 91 U. S. 252; *Stanton* v. *Embrey*, 93 U. S. 548; *Taylor* v. *Bemiss*, 110 U. S. 42, 46.

II. The contract, being one authorized by law when made, is protected by the Constitution from the effect of any act of Congress which would impair its obligation, or deprive the plaintiff in error of such rights of property as were therein secured to him.

The judgment of the court from which this writ of error is prosecuted, is based exclusively upon the provisions of the ninth section of the act entitled "An act to provide for the adjudication and payment of claims arising from Indian depredations," approved March 3, 1891, 26 Stat. 851, which provides as follows: "That all sales, transfers or assignments of any such claims, heretofore or hereafter made, except such as have occurred in the due administration of decedent's estates, and all contracts heretofore made for fees and allowances to claimants' attorneys are hereby declared void."

The learned judge who decided this case, declared that the effect of the above statute was to render the said contract "nugatory," and to "supersede" the provisions of said con-

tract so far as provision was therein made for compensation
to the plaintiff in error for services rendered by him in the
prosecution and collection of the claim of the defendant
testator against the United States. If such is the legal effect
of that statute, it is unconstitutional and void, for the follow-
ing reasons : (1) it impairs the obligations of a lawful contract
made between two citizens for the accomplishment of a law-
ful purpose; (2) it deprives the plaintiff in error of his prop-
erty without "due process of law;" (3) it is the assumption
by Congress of judicial power. *Sinking Fund case*, 99 U. S.
700; *Fletcher* v. *Peck*, 6 Cranch, 87; *United States* v. *Klein*,
13 Wall. 123.

III. A statute which is remedial in its character, and pro-
vides for the judicial determination of claims against the
United States, is neither "an act of grace," a bounty, a gift
nor a donation. *De Groot* v. *United States*, 5 Wall. 410;
*United States* v. *Clyde*, 13 Wall. 35; *United States* v. *Ander-
son*, 9 Wall. 56.

If, however, the fruits of the judgment secured to Halsell
by the services rendered by the plaintiff under said act, and
his receipt of such fruits was a gift he would not by an accept-
ance of the gift have been relieved of his contract obligation
to the plaintiff. This question is expressly decided in the case
of *Davis* v. *Commonwealth*, 164 Mass. 241, recently decided by
the Supreme Judicial Court of Massachusetts, and involved the
right of Davis to recover the fee stipulated to be paid by the
State for services rendered in securing a refund of the direct
tax which had been paid by Massachusetts under the provi-
sions of the direct tax-law of August 5, 1861. The court
held that the attorney, having rendered the service required
by the contract, was entitled to be paid the compensation
therein stipulated.

IV. The acceptance by the plaintiff in error of the sum of
fifteen hundred dollars allowed by the Court of Claims in its
judgment in the case of *Halsell's Executrix* v. *United States*,
and its subsequent payment by the United States to the plain-
tiff, did not render the contract made by Halsell with the
plaintiff, "not enforceable" in the courts of the United States.

The fact of the receipt by the plaintiff, of that sum, did not satisfy or discharge the obligations of the defendant in error to the plaintiff under the contract of May 22, 1874. *Bostwick* v. *United States*, 94 U. S. 53.

*Mr. Henry C. Coke* for defendant in error. (The defendant in error, *Mrs. Julia F. Halsell*, was on his brief.)

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

In determining the construction and effect of the contract sued on, it is important to keep in mind the acts of Congress and the decisions of this court bearing upon the subject.

In *Kendall* v. *United States*, 7 Wall. 113, certain attorneys in 1843 (before Congress had passed any act regulating assignments of claims against the United States) made an agreement with the representatives of the Western Cherokees, a branch of the Cherokee tribe of Indians, to prosecute a claim of the Western Cherokees against the United States, and to receive directly from the United States five per cent of all sums collected upon the claim. By a treaty between the United States and the Cherokee tribe in 1846, it was agreed that certain sums found due to the Western Cherokees should be paid by the United States directly to the heads of families *per capita*, and should not be assignable. 9 Stat. 874. And by the act of September 30, 1850, c. 91, making an appropriation of the sum necessary to fulfil that treaty, Congress provided that "in no case shall any money hereby appropriated be paid to any agent of said Indians, or to any other person or persons than the Indian or Indians to whom it is due." 9 Stat. 556. This court held that the attorneys could not maintain a suit in the Court of Claims to recover, as compensation for their services in procuring the treaty and appropriation, the five per cent that the Indians had agreed should be paid to the attorneys by the United States; and, speaking by Mr. Justice Miller, said: "We apprehend that the doctrine has never been held, that a claim of no fixed amount, nor time or mode of payment; a claim which has

never received the assent of the person against whom it is asserted, and which remains to be settled by negotiation or suit at law, can be so assigned as to give the assignee an equi- table right to prevent the original parties from compromising or adjusting the claim on any terms that may suit them." "We have no hesitation in saying that the United States, under the circumstances, had the right to make the treaty that was made, without consulting plaintiffs, or incurring any liability to them. The act of Congress, which appropriated the money, only followed the treaty in securing its payment to the individual Indians, without deduction for agents. And both the act and the treaty are inconsistent with the payment of any part of the sum thus appropriated to plaintiffs." 7 Wall. 116–118.

By the act of February 26, 1853, c. 81, § 1, "All transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses, after the allow- ance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." 10 Stat. 170. This section has been reënacted, in almost the same words, in section 3477 of the Revised Statutes.

At the first term of this court after the passage of the act of 1853, it was said by this court, speaking by Mr. Justice Grier, that "this act annuls all champertous contracts with agents of private claims." *Marshall* v. *Baltimore & Ohio Railroad*, 16 How. 314, 336. And the act has since been held by this court to include all specific assignments, in whatever form, of any claim against the United States under a statute or treaty, whether to be presented to one of the executive de- partments, or to be prosecuted in the Court of Claims; and to make every such assignment void, unless it has been assented to by the United States. *United States* v. *Gillis*, 95 U. S. 407;

*Spofford* v. *Kirk,* 97 U. S. 484; *McKnight* v. *United States,* 98 U. S. 179; *St. Paul & Duluth Railroad* v. *United States,* 112 U. S. 733; *Hager* v. *Swayne,* 149 U. S. 242, 247.

In *Spofford* v. *Kirk,* above cited, the owner of a claim against the United States for military supplies had, before its allowance or the issue of a warrant for its payment, drawn upon the attorneys employed by him to prosecute it an order to pay to a third person a certain sum out of any moneys coming into their hands on account of the claim; the order had been accepted by the drawees, and sold by the payee to a purchaser in good faith for value; and the drawer and acceptors, after the issue of the treasury warrant, declined to admit the validity of the order. It was adjudged that the accepted order, otherwise an equitable assignment, was void, by reason of the statute, and therefore passed no right in the fund, and could not be enforced against the drawer and acceptors.

That decision has never been overruled or questioned by the court, although the act has been held not to apply to general assignments made by a debtor of all his property for the benefit of his creditors, whether under a bankrupt or insolvent law, or otherwise; *Erwin* v. *United States,* 97 U. S. 392; *Goodman* v. *Niblack,* 102 U. S. 556; *Butler* v. *Goreley,* 146 U. S. 303; nor to enable the original claimant to recover of the United States a sum once paid by the United States to his attorney in fact, holding a power of attorney, made before the allowance of the claim and the issue of the warrant, and remaining unrevoked; *Bailey* v. *United States,* 109 U. S. 432; nor to invalidate a contract of partnership in furnishing supplies to the United States, or a promise by one to another of the partners to pay a sum, already due him under the partnership articles, out of money to be received from the United States for such supplies; *Hobbs* v. *McLean,* 117 U. S. 567; nor to affect the right of a mortgagee of real estate leased to the United States, or of a pledgee of the rents thereof, to recover from the mortgagors or pledgors the amount of rents paid to them by the United States. *Freedman's Co.* v. *Shepherd,* 127 U. S. 494.

In the latest case in which the act was considered, the court, speaking by the present Chief Justice, said: "The legislation shows that the intent of Congress was that the assignment of naked claims against the government for the purpose of suit, or in view of litigation or otherwise, should not be countenanced. At common law, the transfer of a mere right to recover in an action at law was forbidden as violating the rule against maintenance and champerty; and, although the rigor of that rule has been relaxed, an assignment of a chose in action will not be sanctioned when it is opposed to any rule of law or public policy." *Hager* v. *Swayne,* 149 U. S. 242, 247, 248.

By several decisions of this court, indeed, beginning at December term, 1853, contracts for contingent fees, by which attorneys, employed to prosecute claims against the United States, were to be allowed a proportion of the amount recovered in case of success, and nothing in case of failure, were held to be lawful and valid. *Wylie* v. *Coxe,* (1853) 15 How. 415; *Wright* v. *Tebbitts,* (1875) 91 U. S. 252; *Stanton* v. *Embrey,* (1876) 93 U. S. 548; *Taylor* v. *Bemiss,* (1883) 110 U. S. 42. The reason for upholding the validity of such contracts was first stated by Mr. Justice Miller, in *Taylor* v. *Bemiss,* as follows: "The well known difficulties and delays in obtaining payment of just claims, which are not within the ordinary course of procedure of the auditing officers of the government, justifies a liberal compensation in successful cases, where none is to be received in case of failure. Any other rule would work much hardship in cases of creditors of small means, residing far from the seat of government, who can give neither money nor personal attention to securing their rights." 110 U. S. 45. The proportion allowed to the attorneys, in *Wylie* v. *Coxe,* was one twentieth; in *Wright* v. *Tebbitts,* one tenth; in *Stanton* v. *Embrey,* one fifth; and in *Taylor* v. *Bemiss,* one half.

Congress has evidently considered that, in some cases, at least, to permit contracts to be made for the payment to attorneys, by way of contingent fee, of a large proportion of the amount to be recovered, is in danger of leading to extortion and oppression.

·It was apparently owing to such considerations, that Congress, in the act of March 3, 1891, c. 538, when conferring upon the Court of Claims jurisdiction of claims arising from Indian depredations, including such claims as had been examined and allowed by the Department of the Interior; and providing that the judgments of that court, unless reversed or modified on rehearing or appeal, should " be a final determination of the causes decided, and of the rights and obligations of the parties thereto ; " enacted, in section 9, that "all sales, transfers or assignments of any such claims, heretofore or hereafter made; except such as have occurred in the due administration of decedents' estates, and all contracts heretofore made for fees and allowances to claimants' attorneys, are hereby declared void; and all warrants issued by the Secretary of the Treasury, in payment of such judgments, shall be made payable and delivered only to the claimant or his lawful heirs, executors or administrators, or transferee under administrative proceedings, except so much thereof as shall be allowed the claimant's attorneys by the court for prosecuting said claim, which may be paid direct to such attorneys ; and the allowances to the claimant's attorneys shall be regulated and fixed by the court at the time of rendering judgment in each case, and entered of record as part of the findings thereof; but in no case shall the allowance exceed fifteen per cent of the judgment recovered, except in case of claims of less amount than five hundred dollars, or where unusual services have been rendered or expenses incurred by the claimant's attorney, in which case not to exceed twenty per cent of such judgment shall be allowed by the court." 26 Stat. 851–854.

·The contract now sued on begins in the form of a power of attorney, appearing on its face to have been intended to be signed by several persons, constituting and appointing Ball their attorney "to receive, and to make, sign and give all necessary acquittances and receipts for, one half of all money which may be received by him, as our attorney at law, for prosecuting claims against the United States government" on account of Indian depredations; and the instrument ends with

this clause: "Said one half being the amount agreed by us to pay him of all that he may recover of said government for said depredations." It is signed by Halsell only.

The instrument was a unilateral contract, not signed by the attorney, nor containing any agreement on his part, and — so long, at least, as it had not been carried into execution — might be revoked by the principal; or might be disregarded by him in making a settlement with the United States; or might be treated by him as absolutely null and void in any contest between him and the attorney. *Kendall* v. *United States*, 7 Wall. 113; *Spofford* v. *Kirk*, 97 U. S. 484; *Bailey* v. *United States*, 109 U. S. 432, 439; *Walker* v. *Walker*, 125 U. S. 339.

By the very terms of the contract, the attorney was to be paid only out of money recovered and received by him from the United States. Although he prosecuted the claim before the Department of the Interior, and that department recommended payment of a certain sum upon the claim, yet before that sum had been paid, or Congress had made any appropriation for its payment, and, therefore, before he had either recovered or received any money from the United States, or was entitled to any compensation by the terms of the contract now sued on, Congress passed the act of March 3, 1891, c. 538.

By this act, as already stated, Congress, while giving to the Court of Claims jurisdiction and authority to inquire into and finally adjudicate certain claims arising from Indian depredations, including such as had been examined and allowed by the Department of the Interior, not only declared void all sales, transfers or assignments of such claims, theretofore or thereafter made — except in the administration of the estates of deceased persons — and all contracts theretofore made for fees and allowances to claimant's attorneys; but expressly provided that all treasury warrants in payment of the judgments of the court should be made payable and be delivered only to the claimant, or to his heirs, executors or administrators, except so much thereof as the court, at the time of rendering the judgment, and as part thereof, should allow to be paid directly to the claimant's attorney, not exceeding in any case twenty per cent of the amount recovered.

In view of previous experience, this last provision was a wise, reasonable and just provision for the protection of suitors; and it was clearly within the constitutional power of Congress.

As was said by Chief Justice Taney, "It is an established principle of jurisprudence, in all civilized nations, that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in, which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it." *Beers* v. *Arkansas*, 20 How. 527, 529; *In re Ayers*, 123 U. S. 443, 505; *Hans* v. *Louisiana*, 134 U. S. 1, 17.

Much reliance was placed by the plaintiff upon the recent decision of the Supreme Judicial Court of Massachusetts in *Davis* v. *Commonwealth*, 164 Mass. 241, in which an agent, whom the State of Massachusetts had employed to prosecute a claim of the State against the United States, and to whom the State had agreed to pay, in full compensation for his services, two per cent of the amount recovered, was held to be entitled to recover from the State the amount of the compensation so agreed upon; notwithstanding that Congress, in the act appropriating money to pay the claim of the State, had provided that no part of the money should be paid by the State to any attorney or agent under a previous contract between him and the representative of the State. But the case was treated by the court as not free from difficulty; and it differed in several respects from the case at bar. The original agreement between the agent and the State was expressly authorized by its legislature, and was therefore lawful and valid when made. That agreement, as construed by the court, did not necessarily require the agent's compensation to be paid out of money received from the United States. The act of Congress, as the court observed, "did not

undertake to declare void any contracts theretofore made between the representative of the State and an agent or attorney." It did provide that no part of the money received from the United States should be paid by the State to its agent. The act was passed after the services in question had been substantially performed. The act itself fixed the fact and the amount of the liability of the United States; appropriated the money to pay it; and left nothing to be ascertained by subsequent judicial proceedings.

But in the present case, as has been seen, the original agreement was contrary to the express terms of the act of Congress of 1853. That agreement cannot, as it appears to us, be construed as a promise of the principal to pay to the attorney any sum whatever, except out of money recovered and received by the attorney from the United States. The act of Congress of 1891 expressly declared void "all contracts heretofore made for fees and allowances to claimants' attorneys." This act was passed before the attorney had either recovered or received any money upon the principal's claim against the United States. The act did not recognize either the lawfulness or the amount of the claim, or make any appropriation for its payment. But it provided for its ascertainment and adjudication by judicial proceedings, and for the allowance, by the judgment in those proceedings, of a reasonable compensation to the attorney. The restriction of the compensation of attorneys to the amounts so allowed by the court was one of the terms and conditions upon which the United States consented to be sued.

In the suit brought by Ball on behalf of Halsell against the United States under the act of 1891, the Court of Claims rendered judgment in favor of the executrix of Halsell against the United States for $17,720, a smaller amount than had been recommended by the Department of the Interior, and fixed the allowance to Ball at the sum of $1500, between eight and nine per cent of the amount of the judgment. The United States have paid this sum to Ball, and the rest of the judgment to Halsell's executrix.

For the reasons above stated, Ball cannot maintain this

action upon the contract between him and Halsell; and he does not sue, and could not recover, upon a *quantum meruit.* *Marshall* v. *Baltimore & Ohio Railroad,* 16 How. 314, 337.

*Judgment affirmed.*