## BALLINGER *v.* LEE.

CONTRACTS; PARTNERSHIP; ILLEGALITY; INJUNCTION; RECEIVERS;
INDIANS; SECRETARY OF THE INTERIOR.

1. A legal infirmity which will enable a party to a contract to avoid it
   must be inherent in it at the time of its inception.

2. A contract between two attorneys whereby they agreed to be partners
   in the prosecution of Indian claims, in accordance with existing con-
   tracts with Indians for fees, is not rendered void *inter sese* by subse-
   quent acts of Congress declaring contracts with Indians for fees
   not consented to by the Secretary of the Interior to be void, and pro-
   viding for the payment out of the funds belonging to the Indians
   of such compensation to attorneys as the Secretary might deem to be
   reasonable; especially as when the partnership contract was en-
   tered into, it was known to be the law that the United States, as cus-
   todian of Indian funds, could limit the compensation to be paid
   counsel representing claimants against such funds, even if it might
   involve the destruction of existing contracts for fees.

3. Equity will not, at the suit of one partner against his copartner, inter-
   pose by injunction and the appointment of a receiver, where it ap-
   pears that the partnership was formed for the prosecution of Indian
   claims under existing contracts which were rendered void by subse-
   quent acts of Congress which provided for the payment by the Sec-
   retary of the Interior of only such compensation to attorneys out of
   Indian funds as he might deem reasonable, where the statutes and
   rules made by the Secretary thereunder permit attorneys to present
   their claims to him for compensation for services, and provide that
   all existing fee agreements shall be filed with him, and that before
   payment is made to any attorney there shall be filed a receipt in
   full for all claims and demands on his or their part; although the
   defendant has notified the plaintiff that he intends to ignore the

claims of the plaintiff and of the partnership for fees, and to claim the right to compensation individually; particularly, where the partnership articles provide that the plaintiff alone is entitled to receive payment from the government on behalf of the firm; as it will be presumed that the Secretary, in the due performance of his duty, and when apprised of this provision of the partnership articles, will pursue a course which will amply protect the plaintiff.

No. 2764.   Submitted March 1, 1915.   Decided April 5, 1915.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, granting the relief prayed for in the bill for the appointment of a receiver and for an injunction.            *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellee, Albert J. Lee, brought this suit by bill in equity in the supreme court of the District of Columbia against appellant, Webster Ballinger, alleging that, in August, 1907, plaintiff and defendant entered into a written partnership agreement to prosecute certain claims to an interest in the common property belonging to the Chickasaw and Choctaw Tribes of Indians, which contract was subsequently extended by parol agreement to include the prosecution of similar claims to the common property of the Cherokee, Creek, and Seminole Indian Tribes.

The partnership contract, after reciting a number of inducements, is embraced substantially in the following provisions: "In consideration of the services rendered by the said Webster Ballinger as hereinabove mentioned, and in consideration of the separate undertakings hereinafter agreed upon, Albert J. Lee and Webster Ballinger, the parties hereto, have this day formed this partnership agreement for the purpose of prosecuting as attorneys at law the claims of all the persons now represented by Albert J. Lee, and such additional persons claiming any rights of whatsoever nature in the common property of the Choctaws and Chickasaws resulting from the grant made to the

Choctaws under and by virtue of the treaty of September 27th, 1830, between the Choctaws and the United States, as may contract with said Ballinger & Lee, or either of them, for their services."

The agreement then provided that the contracts should be taken in the name of Ballinger & Lee. It prohibited any assignment of an interest in the fees, except upon the written consent of the partners. It further provided "that all checks, drafts, notes, or other negotiable instruments received by said firm shall be indorsed in the firm name by Albert J. Lee, and no check, draft, or other negotiable paper shall be deposited in any bank or other institution for collection without first being countersigned by said Albert J. Lee, and all moneys received or collected by either of the parties to this contract, their agents or representatives, derived from any contracts of employment taken by said firm, shall be deposited in such bank as may be mutually agreed upon, to the credit of Ballinger & Lee, the same to be disbursed or paid out only upon the check of said Ballinger & Lee, when countersigned by Albert J. Lee." Provision was also made for the keeping of books of account and for a general accounting every six months.

It is alleged in the bill that, as a result of their parol agreement, "during the prosecution of the claims of said Choctaw and Chickasaw claimants the said firm became aware thereof and interested in similar claims of citizens of the United States with rights to share in the privileges and property of the Cherokees, Creeks, and Seminole tribes or nations of Indians; and their contract of copartnership was, by mutual consent, so broadened in its scope as to embrace and include the same."

The services of the firm in prosecuting these claims before Congress and the courts are detailed at length in the bill, which services, it is alleged, resulting in the enactment of a law by Congress whereby "provision was made for the recognition of and payment to certain of the clients of the firm of the plaintiff and the defendant, as well also as other persons belonging to classes of claimants in whose interest and behalf said firm had

succeeded in securing, by Congress, the recognition of their rights."

By the act of Congress of June 30, 1913 (38 Stat. at L. 97, chap. 4, Comp. Stat. 1913, sec. 4077), it was provided: "No contract made with any Indian, where such contract relates to the tribal funds or property in the hands of the United States, shall be valid, nor shall any payment for services rendered in relation thereto be made unless the consent of the United States has previously been given."

By the act of Congress approved August 1, 1914 (38 Stat. at L. 601, chap. 222), provision was made for the enrolment on the proper respective rolls of the Five Civilized Tribes certain persons, among whom were clients of the firm of Ballinger & Lee. The act then provided that, "unless the consent of the United States shall have previously been given, all contracts made with any person, or persons, now or hereafter applicants for enrolment as citizens in the Five Civilized Tribes for compensation for services in relation thereto, are hereby declared to be void and of no effect, and the collection or receipt of any moneys from any such applicants for citizenship shall constitute an offense against the laws of the United States, punishable by a fine of not exceeding $500 or imprisonment for not exceeding six months, or both."

It was also provided (38 Stat. at L. 600, chap. 222) "that the Secretary of the Interior is authorized, under such rules and regulations as he may prescribe, to determine whether any attorney or attorneys have actually rendered services of value to any of the persons herein enrolled, and to allow compensation therefor, including proper and necessary expenses incurred in connection with services rendered, in such amounts as he may deem proper, and to pay the amount so fixed and found to be due such attorney or attorneys and deduct the same from the amount paid to the person enrolled as herein authorized, by and with his consent and approval: *Provided*, That before payment is made to any attorney or attorneys there shall be filed a receipt in full of all claims or demands on the part of

such attorney or attorneys in such form as may be prescribed by the Secretary of the Interior."

In pursuance of this act, the Secretary of the Interior promulgated certain rules and regulations, among which was the following: "Before any compensation and expenses are allowed any attorney or attorneys, * * * said attorney or attorneys must, within thirty days from the date of the approval of these regulations, file with the Commissioner of Indian Affairs, Washington, District of Columbia, the contract or agreement entered into with such enrolled person or persons, or someone lawfully authorized to act for him or her, setting forth what compensation was to be paid thereunder to such attorney or attorneys, for services rendered in his or her behalf, or other written evidence sufficient to establish an implied contract to pay for such services, together with a verified itemized statement of services rendered and expenses incurred, giving the character and extent of such services and expenditures, and the dates when, and the places where, same were rendered."

The material allegations of the bill, however, upon which plaintiff must stand or fall, read as follows:

"Fifteenth. That, although no formal claim has yet been filed by the defendant under and pursuant to the terms of said regulations of the Interior Department, defendant has advised the plaintiff that it is his purpose, in the presentation of the claim, to ignore the copartnership claims and the rights of the plaintiff and the subcontractors of the firm of the plaintiff and the defendant thereunder; and to stand as an individual for such compensation as he may be enabled to secure by way of award to defendant as such individual; and that the defendant has further advised the plaintiff that he would contend, in filing and prosecuting said claim, that he individually had secured the passage of the remedial legislation, and that he, and he alone, was entitled to any and all compensation which might be awarded in consideration for the professional services performed in the interest of the Indian claimants.

"Sixteenth. That there is in the possession of the defendant the books, papers, and documents of the firm, including the con-

tracts with the Indian claimants, required by the regulations to be filed with the application for compensation of counsel; that without said documents, it would be impossible for the plaintiff to properly comply with the regulations in making the application on behalf of the firm for compensation; that the defendant denies to plaintiff access to said firm records and contracts; that even if the plaintiff were in position to present such claim without the aid of said records, it would be greatly to the detriment to all concerned for the matter to be presented to the Department by contending factions of the same legal entity, alone entitled to the ultimate result of such award as the Secretary of the Interior may make, it being manifestly to the interest of all concerned that, without schismatic spirit or division, the claim of said firm, including all elements thereof, should be presented in a manner in consonance with the basic equities and rights on which the claim can properly be presented."

The plaintiff prayed for the appointment of a receiver who should be directed to represent the partnership before the Secretary of the Interior in reference to allowance for services rendered, and to receive the sums allowed therefor; and that defendant be enjoined from interfering in any way with the receiver in relation to said claims, and from setting up or presenting any claim in hostility to said firm.

A temporary receiver was appointed, and defendant was directed to show cause why the prayer of the bill should not be granted. The defendant answered the rule, and also moved to dismiss the bill. A hearing was had upon the rule and motion to dismiss, and the court entered a decree in accordance with the prayer of the bill. From this decree the case comes here on appeal.

*Mr. Weldon M. Bailey* and *Mr. Joseph W. Bailey* for the appellant.

*Mr. George H. Lamar* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is urged by counsel for defendant that the act of Congress declaring the contracts which formed the basis of the copartnership void operated to so taint the partnership contract as to nullify it. We are unable to agree with this contention. It is agreed that the partnership contract, when made, was valid. Indeed, the fee contracts were then legal. The statute striking down the fee agreements did not totally destroy the relation of attorney and client thereby established. The rights of the partners were reserved to the extent of establishing a claim to compensation for services rendered in *quantum meruit* before the Secretary of the Interior. When the copartnership agreement was made, it was familiar law in this country that the United States, as custodian of Indian funds, in the exercise of its inherent powers of sovereignty, could limit the amount of compensation to be paid counsel for representing even a citizen of the United States who made a claim against such a fund, although it might involve the destruction of an existing contract for fees. *Ball* v. *Halsell,* 161 U. S. 72, 40 L. ed. 622, 16 Sup. Ct. Rep. 554; *Marchie Tiger* v. *Western Invest. Co.* 221 U. S. 286, 55 L. ed. 738, 31 Sup. Ct. Rep. 578. Plaintiff and defendant were advised of this ruling when the copartnership was formed, but it still remained for Congress to apply the rule to their agreements. Under these circumstances, it is doubtful if the validity of the partnership agreement would have been nullified had the partners' right to recover anything against the Indian fund been denied. A legal infirmity which will enable a party to a contract to avoid it must be inherent at the time of its inception. The act not only does not declare the services of attorneys an unlawful consideration upon which to base a charge against the fund of the Indians, but it specifically preserves this right.

It appears that services were performed by this copartnership which form a legal charge against the Indians, and it follows that whatever is recovered is an asset of the firm. The act only provides for justice between the Indians and counsel who have

performed services for them. It has no concern for existing contracts between attorneys which may govern the distribution of the fees so obtained. If, in the last analysis, no fees should be recovered, it would not affect the validity of the partnership in its adjustment and disposition of expenses, office fixtures, or whatever assets and liabilities it might have.

But is there ground for the interposition of equity by injunction and the appointment of a receiver? Defendant is enjoined from presenting any claim for services to the Secretary of the Interior, either on his own behalf or on behalf of the firm, in any matter growing out of the cases involved in the partnership. A receiver has been appointed to appear in the Department to assert the claims of the partnership, and to receive such compensation as may be allowed by the Secretary of the Interior. We think no reason in equity exists for either an injunction or the appointment of a receiver. The act of Congress, the rules of the Secretary made pursuant thereto, and the terms of the partnership agreement fully and amply protect plaintiff. The act of Congress permits all parties interested to present their claims to the Secretary of the Interior for compensation for services rendered. This opens the door not only to plaintiff and defendant individually, but as partners, to submit proof of services in all cases involved in the partnership. For the proper protection of all parties, the Secretary, by rule, has required all fee agreements to be filed with him, and when it is made to appear to him that outstanding fee agreements exist as an original basis for the claims of the partnership, he will undoubtedly require compliance with his rules and block every avenue of recovery until the contracts and such records of the partnership as appear essential in the case have been produced. The act then provides "that before payment is made to any attorney or attorneys there shall be filed a receipt in full of all claims or demands on the part of such attorney or attorneys in such form as may be prescribed by the Secretary of the Interior." [38 Stat. at L. 600, chap. 222.]

With such a legal tribunal open to plaintiff, what protection can he claim in equity? His course is plain. All he is required

to do is to place before the Secretary of the Interior the partnership agreement, or a true copy thereof; and the Secretary, in the proper performance of his duties, will not order payment in any claim in which it appears the firm is interested until a full receipt and acquittance has been executed by the partners jointly or as a firm. A like duty devolves upon the Secretary to see that the warrant or evidence of indebtedness is delivered to the person authorized to receive it. In this instance, by reference to the partnership agreement, it appears that plaintiff is alone authorized to receive payment from the Government on behalf of the firm. It thus appears that the Secretary, in the due performance of his duty, must, of necessity, pursue a course which will amply protect plaintiff.

The decree is reversed with costs, and the cause is remanded with directions to dismiss the bill.     *Reversed and remanded.*