## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### CALHOUN V. MASSIE.

November 14, 1918.

Absent, Whittle, P.

1. CONSTITUTIONAL LAW—*Vested Rights—Finding of United States Court of Claims—Judgments and Decrees.*—A finding of the court of claims favorable to a claim against the government of the United States for property taken by the federal forces during the late civil war, and the certification of the same to Congress, though authorized by statute, is not a judgment, and creates no vested rights.

2. CONSTITUTIONAL LAW—*Vested Rights—Finding of United States Court of Claims.*—Where there has been a finding of the court of claims in favor of a claim and a certification thereof to Congress, the government had the same right in law to reject the claim in toto, or to attach conditions to its payment when the act of 1915 (omnibus claims act, section 4, 38 Stat. L., page 996) was passed, as it would have had if there had been no statute authorizing the court of claims to consider and report upon the matter. The condition, therefore, incorporated in the act of 1915 limiting the fees of attorneys or agents for services rendered to twenty per cent. of the amount recovered, was not unconstitutional.

3. UNITED STATES—*Claims—Limitation of Attorney's Fee—Case at Bar.*—Defendant by a contract dated April 18, 1911, agreed to pay plaintiff in consideration of his professional services in the prosecution of defendant's claim against the government of the United States for property taken by the federal forces during the late civil war, a sum equal to fifty per cent. of the amount which was collected upon said claim.

*Held:* That the contract was void under the omnibus claims act, section 4, 38 Stat. L., p. 996, and this although the services had been rendered by plaintiff and a finding of the court of claims in favor of the claim obtained and a certification thereof to Congress before the omnibus claims act went into effect.

85

Error to a judgment of the Circuit Court of Nelson county, in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*C. C. Calhoun* and *L. Grafton Tucker,* for the plaintiff in error.

*Caskie & Caskie,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This writ of error brings under review a judgment of the circuit court sustaining a demurrer to a declaration in assumpsit. The action was based upon the following contract in writing, dated April 18, 1911.

"Fee agreement. This agreement, witnesseth: That I, Bland Massie, of Tyro, Nelson county, Virginia, have employed C. C. Calhoun, of Washington, D. C., as my attorney to represent my claim against the Government of the United States for property taken by the federal forces during the late civil war, and in consideration of his professional services in the prosecution of said claim, I hereby agree and bind my heirs and legal representatives, to pay to him, his heirs or legal representatives, as a fee a sum equal to 50 per cent. of the amount which may be collected upon said claim, said fee to be a lien on any warrant which may be issued in payment of said claim."

The declaration, after setting out the contract, made the following material allegations: That the plaintiff, C. C. Calhoun, faithfully and efficiently performed the work required of him by the contract; that he successfully prosecuted the claim of the defendant, Bland Massie, before the

court of claims of the United States, involving extensive and varied legal services set out in detail in the declaration; that as a result of these services the court of claims found in favor of the claim to the amount of $1,900; that this finding was approved by Congress and an appropriation made to pay the claim; that the same was paid to the defendant by a treasury warrant, less twenty per cent. which was paid by a like warrant to the plaintiff on account of his fee and accepted by him without waiving his rights under the contract to fifty per cent. of the amount; that thus far he has only received twenty per cent. of the sum collected; and that thirty per cent. thereof is still wholly unpaid and due to him by the defendant.

The declaration then proceeds to set out that subsequent to the execution of the contract, subsequent to the performance of the plaintiff's services thereunder, and subsequent to the finding of the court of claims and the certification thereof to Congress, an act, commonly known as the "Omnibus Claims Act," was passed by Congress, approved March 4, 1915, entitled "An act making appropriations for payment of certain claims in accordance with findings of the court of claims, reported under the provisions of the acts approved March 3, 1883, and March 3, 1887, and commonly known as the Bowman and Tucker acts, and under the provisions of section 151 of the acts approved March 3, 1911, commonly known as the Judicial Code" (38 Stat. L., p. 962); and that this act, which included the defendant's claim, contained a provision (38 Stat. L., p. 996), limiting fees of attorneys for claimants to twenty per cent. of the amount of the claims as allowed and directed to be paid, said twenty per cent. to be in full of all demands for services rendered by attorneys in behalf of claimants.

The declaration concludes with the following averment or proposition, which raises the only really controverted question presented for our decision, to-wit: "That the act

of Congress, omnibus claims act, sec. 4, 38 Stat. L., p. 996, is null and void and unconstitutional and of no force and effect insofar and to the extent it may undertake to fix and regulate the amount of fee should be paid to the plaintiff as attorney for the claimant, the defendant, which he had earned under a written agreement with the defendant, and which agreement was executed and services performed thereunder prior to the passage of said act, which agreement specified there should be paid to the plaintiff the sum of fifty per cent. of the amount of the claim collected. * *"

Several grounds were assigned for the demurrer to the declaration, but the one which stated more directly than any of the others the ground chiefly relied upon was, "that the appropriation made by Congress to pay said claim was conditioned upon the application of a certain sum and no more, to the plaintiff." If section 4 of the act was constitutional and valid, this ground was well taken, and the demurrer was properly sustained.

The record before us does not contain a copy of the order entered by the court of claims, but merely shows by an averment in the declaration that there was a finding by that court favorable to the claim, and that the same was certified to Congress. The court of claims had no jurisdiction to go further in hearing and determining the claim, and manifestly did not undertake to go further, than to ascertain and report the same to Congress, "together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the United States, and the amount, if any legally or equitably due from the United States to the claimant, etc." (2 U. S. Comp. Stat., p. 1468, sec. 1136, sub-sec. 1; *Id.* p. 1499, sec. 1142. Whether the claim would be paid or not, and upon what conditions, still remained a question which depended absolutely upon the will and action of Congress. Whatever

legislative recognition had theretofore been given by Congress to the proceedings under which the claim had, up to that time, been prosecuted, nothing had been done to confer upon either Massie or Calhoun any such rights as would thereafter disable that body from imposing any conditions which it might see fit to impose with reference to the payment of the claim. Mr. Justice Van Devanter, in *Gritts* v. *Fisher*, 224 U. S. 640, 32 Sup. Ct. 580, 56 L. Ed. 928, referring to a contention that a certain act of Congress was unconstitutional and void, because it impaired rights vested by a former act dealing with the same subject, said: "No doubt such was the purport of the act, but that, in our opinion, did not confer upon them (certain members of an Indian tribe) any vested right such as would disable Congress from thereafter making provision for admitting newly-born members of the tribe to the allotment and distribution. The difficulty with the appellant's contention is that it treats the act of 1892 as a contract, when it is only an act of Congress, and can have no greater effect." It is true that Mr. Justice Van Devanter was here discussing a controversy involving Indian tribal property, as to which the United States Government possesses peculiar and plenary administrative power. But the principle involved in that case and in this one is the same, namely, that until Congress had taken some such action as to confer vested rights on the parties, the subject remained within its exclusive power and control. The finding of the court of claims, though authorized by statute, is not a judgment, and creates no vested rights. 2 U. S. Comp. Stat. sec. 1142, p. 1506, note 14. The statute authorizing the proceeding in that court confers no new right, save that of making the United States a defendant in a judicial tribunal. 2 U. S. Comp. Stat., sec. 1142, p. 1500, note 1.

In *Beers* v. *Arkansas*, 61 U. S. (20 How.) 527, 529, 15 L. Ed. 991, Chief Justice Taney said: "It is an established

principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, *and may withdraw its consent whenever it may suppose that justice to the public requires it."* (Italics added).

We think there can be no sort of question that the government had the same right in law to reject the claim *in toto,* or to attach conditions to its payment when the act of 1915 was passed, as it would have had if there had been no statute authorizing the court of claims to consider and report upon the matter. The condition, therefore, which was incorporated in that act is plainly conclusive of this case. That condition was as follows:

"That no part of the amount of any item appropriated in the bill in excess of twenty per centum thereof shall be paid or delivered to or received by any agent or agents, attorney or attorneys, on account of services rendered or advances made in connection with said claim. It shall be unlawful for any agent or agents, attorney or attorneys, to exact, collect, withhold or receive any sum which in the aggregate exceeds twenty per centum of the amount of any item appropriated in this bill on account of services rendered or advances made in connection with said claim, any contract to the contrary notwithstanding. Any person violating the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding $1,000.00."

It was, as we have seen, only by virtue of the act of 1915 that the claim became collectible at all, and by its pro-

visions, therefore, the rights of both Massie and his counsel are determined. The act by its terms precludes any contention that the contract sued on in this case could be made to impose a personal obligation on Massie to pay from funds derived from some independent source more than twenty per cent. of the amount of the claim. The language of the enactment indicates a purpose to forestall any such evasion of its purpose, and to that end not only makes it unlawful to pay or receive as a fee more. than twenty per cent. of the funds actually appropriated and paid under the act, but also makes it unlawful "for any agent or agents, attorney or attorneys, to accept, collect, withhold or receive any sum which in the aggregate exceeds twenty per cent. of the amount of any item appropriated in this bill on account of services rendered or advances made in connection with said claim, *any contract to the contrary notwithstanding.*"

The judgment of the lower court seems to us, therefore, clearly right, independent of authority; but we do not think that the case, insofar as the fundamental and controlling principles which must be applied in its decision are concerned, can be distinguished from the case of *Ball* v. *Halsell,* 161 U. S. 72, 16 Sup. Ct. 554, 40 L. Ed. 622. It is true that in the *Ball Case,* by the terms of the contract the attorney was to be paid out of the funds recovered and received by him from the United States, and thus contravened the plain terms of the statute involved in that decision. But we have already seen that the contract in the case at bar likewise contravenes a statute which in terms prohibits the payment or receipt as a fee *from any source of an amount in excess of twenty per cent.* of the claim as allowed. It is also true that in the *Ball Case,* the contract for the fee was invalid at the time of its execution, while in the instant case, it only became so by reason of the condition imposed by the subsequent act. This, and other differences which might be ad-

verted to, between the *Ball Case* and the instant case, are circumstantial merely, and cannot be made to differentiate the cases in any substantial respect. Mr. Justice Gray, delivering the opinion of the court, said: "Although he (Ball) prosecuted the claim before the Department of the Interior, and that department recommended payment of a certain sum upon the claim, yet before that sum had been paid, or Congress had made any appropriation for its payment, and, therefore, before he had either recovered or received any money from the United States, or was entitled to any compensation by the terms of the contract now sued on, Congress passed the act of March 3, 1891, chap. 358.

"By this act, as already stated, Congress, while giving to the court of claims jurisdiction and authority to inquire into and finally adjudicate certain claims arising from Indian depredations, including such as had been examined and allowed by the Department of the Interior, not only declared void all sales, transfers or assignments of such claims, theretofore or thereafter made—except in the administration of the estates of deceased persons—and all contracts theretofore made for fees and allowances to claimant's attorneys, but expressly provided that all treasury warrants in payment of the judgments of the court should be made payable and be delivered only to the claimant, or to his heirs, executors or administrators, except so much thereof as the court, at the time of rendering the judgment, and as part thereof, should allow to be paid directly to the claimant's attorney, not exceeding in any case 20 per cent. of the amount recovered.

"In view of previous experience, this last provision was a wise, reasonable and just provision for the protection of suitors and it was clearly within the constitutional power of Congress."

The principles and authorities which we have discussed seem to us so absolutely conclusive of the controversy that

we deem it unnecessary to further prolong this discussion. We were referred to a number of authorities which to a greater or less degree support the contention of the plaintiff in error. See in particular *Moyers* v. *Memphis,* 135 Tenn. 263, 186 S. W. 105, Ann. Cas. 1918c, 854; *Newman* v. *Moyers,* 47 D. C. App. 102, 45 Wash. L. Rep. 771; *Black* v. *O'Hara,* 175 Ky. 623, 194 S. W. 811; *Lay* v. *Lay,* (Miss.) 79 So. 291. With reference to these apparently adverse decisions, we deem it sufficient to say that insofar as they are not distinguishable from the present case, we think they are in conflict with the better reason, as well as with the higher authority, of *Ball* v. *Halsell, supra.* A more persuasive State court decision is found in *Ralston* v. *Dunaway,* 123 Ark. 12, 184 S. W. 425, Ann. Cas. 1918c, 870, where the Supreme Court of Arkansas, upon substantially the identical question before us, follows *Ball* v. *Halsell,* and reaches the conclusion arrived at by us in this case.

The question involved in this case of course is purely one of law, and it is not perhaps incumbent upon us to say anything in defense of the attitude of the defendant in error.

Inasmuch, however, as a very strong appeal was made to us in the oral argument of this case, based upon the alleged natural equity of the plaintiff's claim and the apparent bad faith of the defendant in declining to comply with the plain terms of his written contract, it seems not inappropriate to say that if our conclusion as to the law of this case is right, there is no way by which the defendant could lawfully perform the contract to any greater extent than it has already been performed on his part. Neither he nor his counsel could have dealt with the fund otherwise than as provided for in the appropriation act without becoming liable to the penalty therein prescribed.

We are of opinion that there was no error in the judgment complained of, and the same must be affirmed.

*Affirmed.*