**Mark S. ZAID, P.C., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 08–020C.

United States Court of Federal Claims.

Jan. 22, 2009.

Eric H. Imperial, Washington, D.C., for Plaintiffs.

Robert E. Chandler, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

In this Fifth Amendment taking case, Washington, D.C. attorney Mark S. Zaid and his professional corporation seek just compensation for the alleged loss of a one-third contingent fee arrangement with his clients caused by ten percent fee restrictions that Congress placed in two private relief bills. This case is before the Court on Defendant's motion under Rule 12(b)(6) of the Court of Federal Claims ("RCFC") to dismiss for failure to state a claim upon which relief may be granted, and Plaintiffs' cross-motion under RCFC 56 for summary judgment. For the reasons stated below, the Court finds that Mr. Zaid has failed to state an actionable claim. Accordingly, Defendant's motion to dismiss is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

### Background

From approximately 1971 through 1992, Barbara and Eugene Makuch provided assistance to the Federal Bureau of Investigation ("FBI") as undercover agents, infiltrating the American Communist Party and its related organizations. Pls.' Resp. & Mot. for Sum. J. at 4–5 (July 21, 2008). After 22 years of service, Mr. and Mrs. Makuch had received no compensation from the FBI, despite assurances that they would be paid. *Id.* at 5; Priv. L. No. 107–3, § 1(3) (2002); Priv. L. No. 107–4, § 1(3) (2002). The Makuches tried unsuccessfully to obtain compensation from the Government without legal representation. Pls.' Resp. at 5. In 1998, the Makuches retained Mr. Zaid to represent them in their efforts to obtain payment. *Id.;* Compl. ¶ 6. After a review of the Makuches' circumstances, Mr. Zaid recommended that they pursue private relief legislation in Congress. *Id.* ¶ 8.

In June 1998, Mr. Zaid sent the Makuches an engagement letter outlining the terms of his representation, leaving blank the contingency percentage that he would receive if he were successful in obtaining compensation for them. Zaid Decl. ¶ 3, Ex. 1. Although the Makuches did not sign the letter, Mr. Zaid asserts that they agreed to all of the proposed terms, except for the contingency percentage and the amount of an up-front retainer payment. Pls.' Resp. at 5. Mr. Zaid and Mrs. Makuch then exchanged a series of emails discussing the possibility of a one-third contingent fee. Compl. ¶ 9; Zaid Decl. Exs. 2–7. Mr. Zaid alleges that through these communications, the parties established a binding contract with the Makuches agreeing to pay a one-third contingent fee. *See* Compl. ¶¶ 9, 18. For purposes of Defendant's motion to dismiss, the Court accepts as true that a binding fee agreement with a one-third contingent fee was in place.

Mr. Zaid worked for more than four years to secure compensation for the Makuches, ultimately procuring the introduction and passage of two private bills through Congress. Zaid Decl. ¶ 11. Specifically, on or about October 27, 2000, Congressman Thomas M. Reynolds introduced H.R. 5598 and H.R. 5599, directing the Secretary of the Treasury to pay $1 million each to Barbara and Eugene Makuch for the lifetime value of compensation earned but not received for their services to the FBI. *Id.* ¶ 12. After no action was taken on the bills before the term of the 106th Congress expired, Congressman Reynolds re-introduced the bills, now H.R. 486 and H.R. 487, on February 6, 2001. *Id.* ¶¶ 12–13. The House of Representatives and Senate passed the bills, and the President signed both into law on October 4, 2002. *Id.* ¶¶ 14–15. Section 3 of each bill contained a ten percent restriction on the amount that an attorney could receive for legal services, and it criminalized the failure to comply with the restriction:

Not more than 10 percent of the sum paid under section 1 shall be paid to or received by the agent or attorney for services rendered in connection with the recovery of such sum. Any person who violates this section shall be fined under title 18, United States Code.

Priv. L. No. 107–3, § 3; Priv. L. No. 107–4, § 3.

After these private bills became law, the Makuches refused to pay Mr. Zaid the ten-percent fee permitted under Sections 3. Zaid Decl. ¶ 19. Mr. Zaid filed suit in the United States District Court for the District of Columbia and ultimately received payment of $100,000 from the Makuches as part of a settlement. *Id.*

Mr. Zaid later filed this Fifth Amendment taking claim on January 11, 2008, alleging that he is entitled to receive one-third of the $2 million amount allowed in the private bills, or $666,666, pursuant to his fee agreement with the Makuches. Compl. ¶ 18. Mr. Zaid asserts that, because of the "United States Government's taking of [his] property, the private relief legislation interfered with his contractual agreement and limited him to ten percent or [$200,000]." *Id.* Mr. Zaid thus alleges that the United States took $466,666 from him, and he seeks recovery of that amount. Compl. ¶ 27.

Defendant filed a motion to dismiss pursuant to RCFC 12(b)(6) on May 19, 2008, contending that Mr. Zaid has failed to state a claim upon which relief may be granted. Def.'s Mot. to Dismiss at 1. Mr. Zaid filed his response on July 21, 2008 along with a cross-motion for summary judgment pursuant to RCFC 56. The parties completed briefing on their motions on October 30, 2008, and the Court heard oral argument on December 9, 2008.

### Discussion

### A. *Jurisdiction*

Under the Tucker Act, "[t]he United States Court of Federal Claims [has] jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). "[A] claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress had withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *E. Enters. v. Apfel,* 524 U.S. 498, 520, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (citation omitted). "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [Court of Federal Claims]." *Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (quoting *United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)).

### B. *Defendant's Motion to Dismiss*

### 1. *Standard of Review*

It is axiomatic that, "when the facts asserted by the claimant do not entitle him to a legal remedy," the Court should dismiss the complaint under RCFC 12(b)(6). *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir. 2002). The Court, when considering a motion to dismiss for failure to state a claim upon which relief may be granted, "must accept as true all the factual allegations in the complaint ... and [the Court] must indulge all reasonable inferences in favor of the non-movant...." *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001) (citations omitted); *see also Huntleigh USA Corp. v. United States,* 63 Fed.Cl. 440, 443 (2005) (denying defendant's motion to dismiss). While detailed factual allegations in the complaint are unnecessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citation omitted).

### 2. *Analysis of Plaintiffs' Claim*

Plaintiffs have failed to state a claim upon which relief may be granted, making dismissal under RCFC 12(b)(6) appropriate. The Takings Clause of the Fifth

Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4. "The purpose of the takings clause is to prevent 'Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Air Pegasus of D.C., Inc. v. United States,* 424 F.3d 1206, 1212 (Fed.Cir.2005) (quoting *Penn Cent. Transp. Co. v. City of N.Y.,* 438 U.S. 104, 123, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). While contracts and other agreements may be considered property within the meaning of the Fifth Amendment, the Government's appropriation of which may trigger the resulting obligation to pay just compensation, "not every exercise of governmental power that interferes with, or frustrates, performance of a contract constitutes a compensable taking." *Kearney & Trecker Corp. v. United States,* 231 Ct.Cl. 571, 688 F.2d 780, 783 (1982), *cert. denied* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 929 (1983) (citation omitted).

The United States Supreme Court historically has approved of Congressional restrictions on attorney's fees in legislation. In *Calhoun v. Massie,* the Supreme Court explained that Congress, when granting relief to individuals, is "free to do so upon such conditions as it deem[s] proper." 253 U.S. 170, 176, 40 S.Ct. 474, 64 L.Ed. 843 (1920) (citation omitted). In *Calhoun,* an attorney brought suit against his client, a recipient of compensation through the Omnibus Claims Act, 38 Stat. 962 (Mar. 4, 1915), to enforce a fifty percent contingent fee agreement. 253 U.S. at 171–73, 40 S.Ct. 474. The Act had limited attorney's fees to twenty percent and had criminalized any violation of the restriction. *Id.* at 172, 40 S.Ct. 474. The Supreme Court explained that Congress had long "undertaken to control in some measure the conditions under which claims against the government may be prosecuted." *Id.* at 173, 40 S.Ct. 474. Congress has sought to "protect claimants from extortion or improvident bargains and ... protect the treasury from frauds and imposition." *Id.* (citation omitted). The Supreme Court explained that such legislation had long been considered constitutional. *Id.* at 174, 40 S.Ct. 474 (citing *Marshall v. Baltimore & Ohio R.R. Co.,* 57

U.S. 314, 6 How. 314, 336, 14 L.Ed. 953 (1853); *United States v. Hall,* 98 U.S. 343, 354, 25 L.Ed. 180 (1878); *Ball v. Halsell,* 161 U.S. 72, 82, 84, 16 S.Ct. 554, 40 L.Ed. 622 (1896)). The Supreme Court noted that the parties knew Congress was free to grant relief upon conditions it deemed proper. *Id.* at 176, 40 S.Ct. 474. The Supreme Court concluded that, given the history of limitations on attorney's fees, the plaintiff should have been aware that his compensation could be restricted by Congress when entering into the contingent fee agreement. *Id.* at 176–77, 40 S.Ct. 474 (citation omitted).

This Court's predecessor, the U.S. Court of Claims, addressed the same issue in *Paul v. United States,* 231 Ct.Cl. 445, 687 F.2d 364 (1982) (Davis, J.), *cert. denied* 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 297 (1983). In *Paul,* attorneys alleged they had entered into contracts with Alaska Native groups to perform legal services in connection with the Native groups' claims in Alaska. *Id.* at 365. Congress subsequently enacted the Alaska Native Claims Settlement Act of 1971, 43 U.S.C. §§ 1601, *et seq.,* which granted the Natives of Alaska significant land and money in settlement of their claims. *Paul,* 687 F.2d at 365. One section of the Act specified the method of payment for attorneys who had participated in the legislative settlement, or in the court prosecution of a claim settled by the Act. *Id.* Specifically, the Act empowered the Chief Commissioner of the Court of Claims to hear and determine legal fees owed. *Id.* The fees would be paid out of the same fund used to settle the claims, but total fees were limited to $1,900,000. *Id.* The Act criminalized the receipt of any extra remuneration by the claiming attorneys. *Id.* at 365–66. Additionally, the Act prohibited the payment of any settlement monies under any attorney contract providing for a percentage fee, making such fee arrangements unenforceable against the Alaskan Natives. *Id.* at 366. Three attorneys brought suit against the United States claiming that the Act constituted a taking of their property. *Id.*

The court in *Paul,* while first holding that a jurisdictional issue precluded recovery for the plaintiffs, found that the restrictions on attorney's fees "were valid statutory provi-

sions supported by established legislative practice and several controlling decisions of the highest court." *Id.* at 369. The court observed that "there is a long history of legislation and administrative action limiting an attorney's share of funds he helped procure from the Federal Government, despite a private contract he may have, or have had, with the client for whom he obtained the federal money." *Id.* at 367 (citation omitted). The court explained that such fee restrictions are valid because:

> ... (a) the payment of federal funds cannot be made without legislation consenting to suit against the United States or authorizing the payment of federal money to the claimants, (b) Congress has the authority to mold and limit its consent to suit and its award of monies, and (c) in making attorney or client contracts the parties must be aware, particularly in view of much past practice (now well over a century old), that Congress could be "unwilling to enact any legislation without assuring itself that the benefits thereof would not inure largely to others than those named in the act."

*Id.* at 367–68 (quoting *Calhoun,* 253 U.S. at 176–77, 40 S.Ct. 474). The court also held that the Act did not constitute a taking of the plaintiffs' pre-existing rights to fees because there was no Congressional authorization of a taking, or in other words, "nothing in the statute or its background supports a taking claim...." *Id.* at 369. The court explained that because the fee limitation was valid, it was unnecessary for Congress to take the plaintiffs' rights by eminent domain. *Id.*

*Paul* and the history of the Congressional fee restrictions are directly applicable to the present case. Much like the plaintiffs in *Paul,* Mr. Zaid has alleged a pre-existing fee agreement that was abrogated by Congressional legislation. *Compare* Compl. ¶¶ 22–27 *with Paul,* 687 F.2d at 365. In the event Mr. Zaid has an enforceable contract with the Makuches for a one-third contingent fee, the two private bills passed by Congress decreased the amount of compensation owed to him. However, the fee restrictions in these bills are valid statutory provisions supported by established legislative practice and Supreme Court precedent. *See Paul,* 687 F.2d

at 369; *Calhoun,* 253 U.S. at 174, 40 S.Ct. 474. Congress possessed the discretion to enact the private bills with fee restrictions. *See Paul,* 687 F.2d at 367–68 (quoting *Calhoun,* 253 U.S. at 176–77, 40 S.Ct. 474). In light of this discretion, Congress's actions would only be considered a taking if Congress expressed its intention to take Mr. Zaid's rights. *Id.* at 369. However, nothing in Private Law Nos 107–3 and 107–4 indicate that Congress intended to take Mr. Zaid's compensation. The fact that Congress did not use its eminent domain power when passing these bills is logical because, much like in *Paul,* the fee restrictions were valid and it was therefore unnecessary for Congress to take Mr. Zaid's contract rights. *See Paul,* 687 F.2d at 369.

Thus, while private bills may have interfered with an agreement between Mr. Zaid and the Makuches, it was within Congress's discretion to enact the bills with fee restrictions without the use of eminent domain power. Even if the fee restriction in the private bills were deemed invalid, there is nothing to indicate that Congress would have wanted the fee restriction to be construed as a taking, obligating the United States to make additional payments. As the court observed in *Paul:*

> It is very difficult to infer an implied taking from invalid legislation which, by definition, is legislation beyond the authority of Congress to enact. Injunctive and declaratory relief may be available to prevent enforcement of the unconstitutional provisions, but a taking can hardly be found without some good indication that Congress would want that result if its handiwork turned out to be invalid without just compensation being paid. Congress might well be satisfied simply to have the offending provisions cut off and declared unenforceable, without more.

*Id.* at 370. Congress's exercise of governmental power thus is not a compensable taking, and Mr. Zaid has failed to state a claim upon which relief may be granted.

■ Defendant, in its motion, argues that Mr. Zaid has not alleged a property interest for purposes of the Fifth Amendment, that his claim is a mere frustration of a contractu-

409

al right, and that the claim is not a compensable taking under the three regulatory taking factors. Def.'s Mot. to Dismiss at 4–11, citing cases such as *Omnia Commercial Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923), *Huntleigh USA Corp. v. United States,* 525 F.3d 1370 (Fed.Cir.2008), and *Chang v. United States,* 859 F.2d 893 (Fed.Cir.1988). However, as it was within Congress's discretion to enact the private bills with fee restrictions, without using its eminent domain power, the Court need not consider these positions.

### C. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs contend in the cross-motion for summary judgment that Mr. Zaid has proven the existence of a legal property interest and a compensable taking. Pls.' Resp. at 4. Given the Court's ruling that the private relief laws are not takings of Plaintiffs' property, the motion for summary judgment is without merit.

### Conclusion

Based upon the foregoing, Defendant's motion to dismiss under RCFC 12(b)(6) is GRANTED and Plaintiffs' cross-motion for summary judgment is DENIED. The Clerk is directed to dismiss Plaintiffs' complaint with prejudice.

IT IS SO ORDERED.