## HAGER *v.* SWAYNE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 232. Submitted April 21, 1893. — Decided May 1, 1893.

The action which § 3011 Rev. Stat., as amended by the act of February 27, 1877, 19 Stat. 240, 247, c. 69, authorizes to be brought to recover back an excess of duties paid, cannot be maintained by a stranger, suing solely in virtue of a purchase of claims from those who did not see fit to prosecute them themselves.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Parker* for plaintiff in error.

*Mr. Charles Page* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was an action brought by R. H. Swayne in the Circuit Court of the United States for the Northern District of California to recover from the defendant, Joseph S. Hager, collector of the port of San Francisco, the sum of $3799.56 on account of duties illegally exacted by the collector on divers importations of cotton shoes and silk shoes, brought into said port in the year 1886 by several importers from ports in China. The complaint contained forty-seven counts for various amounts alleged to be due upon an equal number of importations made by many different firms and persons, and the plaintiff claimed to be entitled to recover the aggregate sum by reason of having become the owner of these several claims by way of purchase and assignment.

Issue having been joined, a trial by jury was waived by stipulation, and it was agreed that all the importations of cotton shoes referred to in the several counts might be considered under one head, and all the importations of silk shoes under another. The Circuit Court thereupon made its findings of fact and therefrom its conclusion of law that the plaintiff was entitled to recover the entire sum sued for. Judgment was accordingly entered against the collector, who brought the case by writ of error to this court.

The upper part of the shoes was composed of cotton or of silk and a portion of the soles was of felt, made up of coarse animal hair of different kinds and of wood fibre and starch or glue, all of which had been felted, mixed, and pressed into layers, which layers were in turn pressed together until the requisite thickness was reached. The most valuable material

of the shoe was the silk or cotton respectively, and no part contained hair of any kind in the textile fabric, nor were they made up by the tailor, seamstress, or manufacturer of similar character to a tailor or seamstress.

The collector decided that these shoes were dutiable under the paragraph of Schedule K of the tariff act of March 3, 1883, 22 Stat. 509, c. 121, fixing duty on wearing apparel of every description not specially numerated or provided for, composed wholly or in part of wool, worsted, the hair of the alpaca, goat, or other animals, made up or manufactured wholly or in part by the tailor, seamstress, or manufacturer, at the rate of forty cents per pound and in addition thereto thirty-five per centum ad valorem ; and exacted of the importers payment of the duties accordingly. The importers, as found by the court, " for the purpose of getting possession of their said merchandise, paid the amount so required of them, but within the time required by law notified the collector of their dissatisfaction with and protest against his decision, and appealed to the Secretary of the Treasury, who affirmed the decision of the collector. The importers thereupon, for value, assigned their claims to the plaintiff, who, within the time required by law, commenced this action for the recovery of the said excess of duties." The Circuit Court held that the cotton shoes fell under the paragraph of Schedule I, (22 Stat. 506,) imposing thirty-five per cent ad valorem on manufactures of cotton not specially enumerated or provided for, and the silk shoes under the last paragraph of Schedule L, imposing fifty per cent on goods not specially enumerated, made of silk or of which silk was the component material of chief value. 37 Fed. Rep. 780.

It was held by this court in *Arnson* v. *Murphy*, 109 U. S. 238, that the common-law right of action against a collector to recover duties illegally collected was taken away by act of Congress, and a statutory remedy given, which was exclusive. Rev. Stat. §§ 2931, 3011. *Arnson* v. *Murphy*, 115 U. S. 579 ; *Cheatham* v. *United States*, 92 U. S. 85. While the common-law right was outstanding, the collector withheld as an indemnity the sum in dispute, but Congress provided that he must

pay into the Treasury all moneys received officially, and that the Secretary of the Treasury should refund erroneous and illegal exactions. Rev. Stat. §§ 3010, 3012½.

The suit to recover back an excess of duties necessarily could only be maintained as affirmatively specified in the statute. Section 3011 of the Revised Statutes, as amended by the act of Congress of February 27, 1877, 19 Stat. 240, 247, c. 69, provides:

"Any person who shall have made payment under protest and in order to obtain possession of merchandise imported for him, to any collector, or person acting as collector, of any money as duties, when such amount of duties was not, or was not wholly, authorized by law, may maintain an action in the nature of an action at law, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid. But no recovery shall be allowed in such action unless a protest and appeal shall have been taken as prescribed in section twenty-nine hundred and thirty-one."

Section 2931 reads as follows:

"On the entry of any vessel, or of any merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, master, commander, or consignee of such vessel, in the case of duties levied on tonnage, or the owner, importer, consignee, or agent of the merchandise, in the case of duties levied on merchandise, or the costs and charges thereon, shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury. The decision of the Secretary on

such appeal shall be final and conclusive; and such vessel, or merchandise, or costs and charges, shall be liable to duty accordingly, unless suit shall be brought within ninety days. after the decision of the Secretary of the Treasury on such appeal for any duties which shall have been paid before the date of such decision on such vessel, or on such merchandise,. or costs or charges, or within ninety days after the payment. of duties paid after the decision of the Secretary. No suit. shall be maintained in any court for the recovery of any duties: alleged to have been erroneously or illegally exacted, until the decision of the Secretary of the Treasury shall have been first. had on such appeal, unless the decision of the Secretary shall be delayed more than ninety days from the date of such appeal in case of an entry at any port east of the Rocky Mountains,. or more than five months in case of an entry west of those. mountains."

From these sections it appears that it is the "owner, im- porter, consignee, or agent of the merchandise, in the case of duties levied on merchandise," who must protest and appeal,. and he is the person who, having made payment under protest. "in order to obtain possession of merchandise imported for him," may maintain the action. It does not follow that. devisees, representatives of the estate of deceased persons,. assignees in bankruptcy or by operation of law, are excluded from bringing suit, for they take by devolution, and are regarded as succeeding in interest to the original party. But the statute does not contemplate that a stranger may bring the action, and such is a voluntary assignee of the mere naked right.

In Castro v. Seeberger, 40 Fed. Rep. 531, Castro had pur- chased the merchandise of the importer while it was in bond, and pending an appeal, and after the decision of the appeal paid the duties assessed in order to obtain possession of the property, and thereupon brought the suit; and it was decided by Judge Blodgett, holding the Circuit Court for the Northern District of Illinois, that the claim against the collector became attached to and followed the merchandise so as to make the purchaser, who paid the charges, constructively the importer.

and entitled to maintain the action under the statute. The purchaser obtained an interest in the thing itself. The case here is wholly different; for these importers, after the decision of the Secretary, paid the duties and took the goods themselves, and then attempted to assign a bare right of action to this plaintiff.

By section 3477, all transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever might be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, were declared to be absolutely null and void, unless they were freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. The language is general which declares the nullity of such assignments, and the only cases where they are recognized is where a warrant has already issued. If there are any cases where the claim cannot be paid by warrant, then they do not come within the exception, but are affected by the general language. 16 Op. Atty. Gen. 261.

The mischiefs designed to be remedied by this section were declared by Mr. Justice Miller in *Goodman* v. *Niblack*, 102 U. S. 556, to be mainly two; first, the danger that the rights of the government might be embarrassed by having to deal with several persons instead of one, and by the introduction of a party who was a stranger to the original transaction; second, that by a transfer of such claim against the government to one or more persons not originally interested in it, the way might be conveniently opened to such improper influences in prosecuting the claim before the Departments, the courts, or the Congress, as desperate cases, where the award is contingent on success, so often suggest.

It has been frequently held that the section does not include transfers by operation of law, or by will, in bankruptcy, or insolvency. *Butler* v. *Goreley*, 146 U. S. 303, and cases cited. But the legislation shows that the intent of Congress was

that the assignment of naked claims against the government for the purpose of suit, or in view of litigation or otherwise, should not be countenanced. At common law, the transfer of a mere right to recover in an action at law was forbidden as violating the rule against maintenance and champerty, and although the rigor of that rule has been relaxed, an assignment of a chose in action will not be sanctioned when it is opposed to any rule of law or public policy.

These considerations are apposite in arriving at the true construction of sections 2931 and 3011, and we are clear that the action provided for cannot be maintained by a stranger suing solely in virtue of a purchase of claims from those who did not see fit to prosecute them themselves.

The judgment is reversed and the cause remanded with a direction to dismiss the complaint.

*Judgment reversed.*