**KINGAN & CO., Inc., v. UNITED STATES.**

No. H–228.

Court of Claims.

Oct. 20, 1930.

450

Paul F. Myers, of Washington, D. C., for plaintiff.

Charles R. Pollard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Ralph E. Smith, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

Upon the first issue we are of opinion that the plaintiff is entitled to maintain this suit. Section 3477, Revised Statutes, now section 203, title 31, U. S. C. (31 USCA § 203) makes null and void all transfers and assignments made of any claim upon the United States, whether absolute or conditional, unless they are properly made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. It has been held that the intent of Congress, as expressed in this section, was that a voluntary assignment of naked claims against the government, for the purpose of suit or in view of litigation or otherwise, should not be countenanced, and that the statute embraced every claim or right to demand money from the United States, however, arising, of whatsoever nature and whenever and wherever prosecuted. United States v. Gillis, 95 U. S. 407, 24 L. Ed. 503. Spofford v. Kirk, 97 U. S. 484, 24 L. Ed. 1032.

It has frequently been held that the section in question does not include transfers by operation of law, or by will, in bankruptcy, or insolvency. Butler v. Goreley, 146 U. S. 303, 13 S. Ct. 84, 36 L. Ed. 981. The mischiefs designed to be remedied by this provision were declared in Goodman v. Niblack,

102 U. S. 556, 26 L. Ed. 229, to be mainly two: First, the danger that the rights of the government might be embarrassed by having to deal with several persons instead of one, and by the introduction of a party who was a stranger to the original transaction; secondly, that by a transfer of such a claim against the government to one or more persons not originally interested in it, the way might be conveniently opened to such improper influences in prosecuting the claim before the departments, the courts, or the Congress, as desperate cases, where the award is contingent on success, so often suggest.

And in Seaboard Airline Ry. v. United States, 256 U. S. 655, 41 S. Ct. 611, 612, 65 L. Ed. 1149, in which the facts disclosed that the plaintiff, by authorized union with other companies, became a consolidated corporation, and by reason of such consolidation fell heir to a claim against the United States for certain transportation services originally payable to one of the companies entering into the consolidation, the government contended that the plaintiff could not maintain the action because of section 3477, Revised Statutes (31 USCA § 203). The Supreme Court, stating that this section of the statutes was intended to prevent frauds upon the Treasury, reiterated the mischiefs designed to be remedied stated in the previous cases, and said: "We cannot believe that Congress intended to discourage, hinder or obstruct the orderly merger or consolidation of corporations as the various states might authorize for the public interest. There is no probability that the United States could suffer injury in respect of outstanding claims from such union of interests and certainly the result would not be more deleterious than would follow their passing to heirs, devisees, assignees in bankruptcy, or receivers, all of which changes of ownership have been declared without the ambit of the statute. The same principle which required the exceptions heretofore approved applies here."

The defendant relies upon United States v. Gillis, supra; Hager v. Swayne, 149 U. S. 242, 13 S. Ct. 841, 37 L. Ed. 719; John Shillito Co. v. McClung (C. C. A.) 51 F. 868; Emmons v. United States (C. C.) 189 F. 414. A consideration of these cases discloses, however, that in each one of them there was a voluntary assignment of the claim against the government to a third party who was a complete stranger to the record. The facts in this case are strikingly analogous to those which gave rise to the case of the Seaboard Airline Railway v. United States, supra. After the reorganization in this case, the same stockholders were in control of the plaintiff as were in control of Kingan & Co., Limited, and their stockholdings in the two companies were in the same proportion. In substance therefore there was really no transfer of the subject-matter of the claim in question, for, although the bare legal title to the claim might have passed from Kingan & Co., Limited, to the plaintiff under the deeds referred to in the facts, the equitable ownership of the claim at all times reposed in the same individuals, that is, in the hands of the same stockholders. Clearly, no fraud could be perpetrated upon the Treasury in a transaction of this kind. All of the reasons advanced in Seaboard Airline Railway v. United States, supra, are alike applicable here, for certainly Congress did not intend to discourage or obstruct an orderly reorganization under the laws of the various states any more than it intended to discourage and obstruct orderly merger or consolidation of corporations under these laws. There is also no probability that the United States could suffer injury in respect of outstanding claims from such a reorganization as is brought about by the facts in this case, and the result would not be more deleterious than would follow the claim passing to heirs, devisees, assignees in bankruptcy, or receivers. Accordingly, we are of opinion that the plaintiff is entitled to maintain this suit.

■ Concerning the question of interest on the claims, we are of opinion that the credit of the overpayment of $82,593.90 for the fiscal year 1917 against the additional assessment for the fiscal year 1918 was allowed under section 1019 of the Revenue Act of 1924 (26 USCA § 153 note) on May 8, 1925, the date on which the Commissioner of Internal Revenue approved the schedule of refunds and credits certified to him by the collector of internal revenue. Interest should, therefore, have been paid upon this credit to May 8, 1925, instead of to March 10, 1925, the date on which the Commissioner signed the schedule of overassessments for transmittal to the collector. Revolution Cotton Mills v. United States (Ct. Cl.) 41 F.(2d) 898.

■■ As to the credit of $136,871.03, consisting of the 1917 overpayment of $82,593.90, and $54,277.13 of the overpayment of $163,755.38 determined for the fiscal year 1918 against the additional assessment for the fiscal year 1919, we are of opinion that this credit was taken within the meaning of section 1116 of the Revenue Act of 1926 (26 USCA § 153 note) on March 23, 1926, when the Commissioner signed and approved the schedule of refunds and credits certified to him by the collector of internal revenue. Pottstown Iron

452

Co. v. United States (Ct. Cl.) 40 F.(2d) 142; Atlas Powder Co. v. United States (Ct. Cl.) 40 F.(2d) 136; West Leechburg Steel Co. v. United States (Ct. Cl.) 40 F.(2d) 131. Interest was therefore payable on this credit under section 1116 of the Revenue Act of 1926 from the date of the overpayment to January 15, 1920, the date on which the tax for the fiscal year 1919 was due. Riverside & Dan River Cotton Mills, Inc., v. United States (Ct. Cl.) 37 F.(2d) 965.

On the amount of $54,277.13, representing a portion of the overpayment of the original tax for 1918 so credited, the Commissioner of Internal Revenue correctly computed and paid interest. See finding 14. On the amount of $82,593.90, representing the 1917 overpayment first credited against the 1918 tax and later credited to 1919, no further interest was payable under section 1116 of the 1926 act inasmuch as interest on this amount had already been allowed and paid from the date of the overpayment thereof to May 8, 1925, under section 1019 of the Revenue Act of 1924, a date subsequent to the due date of the 1919 tax against which it was last credited. The purpose of section 1116 of the act of 1926 was to allow interest to the taxpayer on overpayments only during the time that the taxpayer was not indebted to the government for a like amount.

Plaintiff is entitled to judgment for $798.-31, representing interest upon $82,593.90 from March 10, 1925, to May 8, 1925, for which judgment will be entered. It is so ordered.