**WELLS FARGO BANK & UNION TRUST CO. v. UNITED STATES.**

No. 30192.

United States District Court
N. D. California, S. D.

Oct. 22, 1953.

Valentine Brookes, San Francisco, Cal., and James A. Cobey, Merced, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Leland T. Atherton, Sp. Assts. to Atty. Gen., for defendant.

ROCHE, Chief Judge.

The plaintiff in this lawsuit, as executor of the estate of Ivey L. Borden, deceased, is seeking to recover federal excess profits taxes allegedly overpaid by Victoria Land Company for the years 1941, 1942, and 1943 to the total amount of $164,834.70 net, exclusive of interest. In each case, a claim for refund was made and denied by the government. It is the plaintiff's contention that Victoria Land Company acquired the properties of a predecessor corporation in a transaction which constituted a tax free reorganization and that therefore it should have been allowed to use the same tax basis as the predecessor corporation, I. L. Borden.

The facts are as follows. Ivey L. Borden acquired Victoria Island prior to March 1, 1913. Shortly after this date he transferred the island to a corpora-

tion entirely owned by him, named Victoria Farms Company. This corporation owned Victoria Island until its dissolution in 1923. In June, 1923, Borden again became the owner of the island in his own name, and it so remained until 1929. During 1929 he formed another corporation, the I. L. Borden Company and transferred the island to it in exchange for its stock. Prior to the formation of the I. L. Borden Company the island had $600,000 in reclamation bonds against it. The formation of a new corporation in 1929 was a step in eliminating these bonds which had begun to fall due, and substituting therefor $600,000 in corporate bonds, secured by a deed of trust on the island.

Borden's methods of farming failed to produce sufficient revenues to service the bonds. In 1932 he decided to refinance them. To this end he instituted negotiations with the West Coast Life Insurance Company. Before the insurance company would agree to aid Borden they insisted that the bondholders be bought out, that the deed of trust be liquidated, and that a new corporation be formed to accept the property. This would allow the insurance company a first mortgage on the island to secure the loan. To this end, Borden wrote a series of letters to the bondholders offering to buy them out, and then later suggested that due to the financial conditions of the island they would either have to take it over or place it up on a foreclosure sale.

In time it developed that it would not be possible to secure the unanimous consent of the bondholders to the plan of direct sale, so an alternative was adopted. This alternative utilized the foreclosure power of the indenture trustee as a means of saving something for the bondholders. Upon the strength of the representation that this method was the only way to save a part of their investment the bondholders agreed, and the land was put up at a public auction. Borden and the insurance company intended that the former would buy in the property at $200,000 which would give the bondholders a return of approximately 33⅓ cents on the dollar. However, a third party, a total stranger, entered the bidding and thereby made the sale a real competitive auction. The result was that Borden and the insurance company, in order to purchase the land, had to outbid the third party, and to do so had to raise their original figure of $200,000 up to $240,000, at which price they did bid in the property.

The theory of plaintiff's case, upon which this lawsuit is founded, is that after the foreclosure sale of the Victoria Island property on December 8, 1933, from which the bondholders realized only 36 cents on the dollar for their bonds, the fair market value of that property was in excess of the price at which it was sold at that sale, and that this excess represented the equity in that property remaining in the I. L. Borden Company after the foreclosure sale, which was allocable to the decedent as the sole stockholder; that it was this equity which was transferred by I. L. Borden Company to Victoria Land Company at that time, and because of this there was a tax free reorganization and not an outright sale of the property.

There are four issues presented before this court. (1) Whether plaintiff is the proper party to bring this action. (2) Whether there was a violation of the assignment act so as to preclude the plaintiff from maintaining this action. (3) Whether there was a tax free reorganization within the Revenue Act of 1932. (4) Whether Victoria Land Company is entitled to use the adjusted tax basis of certain properties which belonged to a predecessor corporation.

■ ■ The first issue of whether plaintiff is the proper party to bring this action depends on whether I. L. Borden could have done so if he were still alive. Under California law, shareholder-transferees of a dissolved corporation have a right to sue in their own names. Trubowitch v. Riverbank Canning Co., 1947, 30 Cal. 2d 335, 182 P.2d 182. The resolution of the board of directors of

Victoria Land Company specifically directed that "all the assets of said corporation, real and personal wherever situated and of whatever character, whether tangible or intangible" were to be conveyed and distributed to Borden. In Novo Trading Corp. v. Commissioner, 2 Cir., 1940, 113 F.2d 320, less all-inclusive language was held to transfer the right to claims for refund of federal taxes. It is clear from the facts and the law above that this claim for refund was actually transferred or assigned to Borden. Therefore, plaintiff as the duly appointed, qualified, and acting executor of the last will and testament of Ivey L. Borden is entitled to bring suit as Borden himself could have done if he were still living.

■ The second issue, whether plaintiff, as executor of the estate of Ivey L. Borden, is entitled to maintain this action, depends on whether the party through whom it claims received his right through an assignment in violation of Section 3477, Revised Statutes, 31 U.S.C.A. § 203. It is well settled that the assignment of claims act has no application to transfers in complete liquidation. Novo Trading Corp. v. Commissioner, supra. It is also well settled that it has no application to transfers by operation of law. Seaboard Air Line Ry. v. U. S., 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149; Western Pacific R. Co. v. U. S., 268 U.S. 271, 45 S.Ct. 503, 69 L.Ed. 951; Kingan & Co. Inc., v. U. S., 44 F. 2d 447, 71 Ct.Cl. 19; Consolidated Paper Co. v. U. S., 59 F.2d 281, 75 Ct.Cl. 215. The cases cited by the defendant to show that this is no longer the weight of authority are actually not in point, and are merely citations showing the exceptions to the nonassignability rule. Rather than being adverse to the plaintiff's position a fair reading of the opinions lend powerful support to it. Thus the assignment act does not apply.

■ The third issue, and the one upon which the decision of the case rests, is whether Victoria Land Company acquired the properties of a predecessor corporation in a transaction which constituted a tax free reorganization within the meaning of Section 112(i) of the Revenue Act of 1932, 26 U.S.C.A. § 112 (g). As stated in Louisville Trust Co. v. Louisville, N. A. & C. R. Co., 174 U. S. 674, 19 S.Ct. 827, 43 L.Ed. 1130, a shareholder's interest in the property is subordinate to the rights of creditors, and any arrangement of the parties by which the subordinate rights and interests of shareholders are attempted to be secured at the expense of the prior rights of any class of creditors comes within the judicial denunciation.

■ The plaintiff goes to great length concerning the letters of Borden to the bondholders getting them to agree to foreclose, in order to show that a reorganization was meant. But no part of the record discloses why the I. L. Borden Company bondholders did not become either bondholders or shareholders in Victoria Land Company which acquired the property. If, as the plaintiff maintains, the value of Victoria Island was in excess of the sales price at the foreclosure sale, and the excess of such value over the sales price justified the issuance of shares of stock of the Victoria Land Company in exchange for shares of I. L. Borden Company, then the bondholders and unsecured creditors were entitled to the benefit of that value. That was a right of property out of which the creditors were entitled to be paid before the stockholders could retain it for any purpose whatsoever. Plaintiff offered no evidence to show that Borden or Victoria Land Company offered to pay the bondholders and other creditors of I. L. Borden Company their share of such alleged excess value or equity.

■ There was actual competitive bidding at the foreclosure sale, and no showing of a forced sale as the plaintiff contends. The bondholders were willing sellers; it was Borden's plan that it should be sold and not the bondholders. They were induced by Borden's representations of the financial condition of

the island to sell; they were not forced to do so. Nor can it be denied that Borden and his interest were willing buyers. The price at which the property was sold at the sale was its fair market value at that time.

■ However, if it was a forced sale, and the selling price was not its fair market value, as plaintiff maintains, then as Borden planned the entire transaction and induced the sale to himself or interest representing him, it cannot be recognized as a valid transaction, because it was nothing more than a device whereby Ivey L. Borden, sole stockholder of I. L. Borden Company was preferred before the creditors of that corporation and comes within judicial denunciation. Louisville Trust Co. v. Louisville, N. A. & C. R. Co., supra.

Plaintiff takes the position that Victoria Land Company's acquisition of the property was not just a fortuitous circumstance, but was a step in an integrated plan for reorganization. But the testimony does not show a plan of reorganization, but rather alternatives resorted to when Borden's efforts to refinance the outstanding bond issue did not materialize.

. ■ There was no tax free reorganization within the terms of Section 112 (i) of the Revenue Act of 1932 because: (a) the entire proprietary interest in the island property of that corporation shifted prior to December 8, 1933 from Borden, sole shareholder, to the first mortgage bondholders; (b) the alleged plan did not provide for their participation in the new corporation either as shareholders or security holders; (c) they did not so participate.

The fact that the alleged plan of reorganization did not make any reference to the purported equity remaining in the mortgagors, or provide for the transfer of such an important equitable interest to the new corporation in exchange for its capital stock, supports the government's view that no equitable interest remained in Borden.

The case of Mascot Stove Co. v. Commissioner, 6 Cir., 120 F.2d 153, certiorari denied 315 U.S. 802, 62 S.Ct. 630, 86 L.Ed. 1202, is applicable. In that case an insolvent corporation had been adjudicated bankrupt and its assets sold to satisfy creditors, and the proceeds of the sale were not sufficient, as here, to pay the corporation's debts. The Court of Appeals held that accordingly neither the corporation nor its stockholders had anything of value to transfer to the new corporation, and that such transactons, even though contemplated in advance as a means of reorganization fail to qualify as such under the terms of the same section of the revenue act as is relied upon in this proceeding by the plaintiff.

The plaintiff's attempt to distinguish the Mascot Stove Case from the instant case lacks substance. Its arguments seem to rest on the ground that I. L. Borden Company had not been adjudicated a bankrupt and that consequently it had something of value to transfer to Victoria Land Company after payment to the bondholders of the net proceeds of the foreclosure sale, which they agreed to accept for their bonds. But the fallacy in the plaintiff's argument is that it ignores the fact that the bondholders were induced to resort to the foreclosure by representations of Ivey L. Borden that they could not realize more for their bonds than he had offered to pay for them. It also ignores the crucial fact that the sale of the subject property was an arms length transaction in which the depositing bondholders who participated were the willing sellers, and the West Coast Life Insurance Company the willing buyer, at a sale in which an outsider bid up the price and would have taken the property had not the insurance company raised its bid.

■ The foreclosure sale divested Borden Company of whatever legal or economic interest it had in the subject property. Hence it had nothing of value to transfer to Victoria Land Company in exchange for shares of the latter's stock which would meet the require-

ments of Section 112(b) (4) of the Revenue Act of 1932. It will be noted that the first requirement of clause (B) of Section 112(i) (1), is a transfer by one corporation to another. Obviously, voluntary corporate action is intended, and thus the clause has been held inapplicable where an indenture trustee, acting (as here) for the benefit of creditors sold the corporate assets at public auction. U. S. v. Galveston-Houston Electric Co., 1 Cir., 84 F.2d 516, certiorari denied 299 U. S. 590, 57 S.Ct. 117, 81 L. Ed. 435.

The fourth and final issue is whether or not Victoria Land Company in determining its equity invested capital for excess profits tax purposes is entitled to use the adjusted tax basis of certain properties which belonged to a predecessor corporation.

In order to apply Section 760(a) of the Internal Revenue Code, 26 U.S.C.A. § 760(a), in computing the excess profit tax credit of Victoria Land Company it must be. shown that it is entitled to use the basis of I. L. Borden Company, the predecessor corporation. To do this Victoria Land Company must have acquired these properties in a reorganization within Section 112(i) of the Revenue. Act of 1932.

■ As previously pointed out in this memorandum, the new company did not acquire these properties in a reorganization which came within the terms of the statute. The new company acquired the properties solely for cash at a foreclosure sale thereof from the trustee under the bond indenture of I. L. Borden Company.

The basis of these properties in the hands of the new company, for the purpose of computing its equity invested capital and its excess profits tax credits, was the cost of these properties to that corporation on December 8, 1933, when it acquired them from the trustee at the foreclosure sale; and that cost was the sum of $240,500, the amount of cash paid for these properties which represented the only consideration which the new company paid therefor.

Even if an actual sale had not been confirmed by this court, the fair market value as of December 8, 1933 was still approximately $240,500. Although the property was sold at a foreclosure sale, the bondholders were not forced to sell, and the property was sold to the highest bidder in an open and free market. A free market may exist even though the market itself may be considered abnormal due to the state of the economy at the time. Brooks-Scanlon Corp. v. U. S., 265 U. S. 106, 44 S.Ct. 471, 68 L.Ed. 934; De La Rama Steamship Co. v. U. S., D.C., 92 F.Supp. 243. The fact that because of the depressed economic conditions which prevailed, the number of purchasers for the property was limited, does not change the fact that those who did participate did so freely.

Plaintiff's case of Bondholders Committee, Marlborough Inv. Co., First Mortgage Bonds v. Commissioner, 315 U. S. 189, 62 S.Ct. 537, 86 L.Ed. 784, is not in point because there the creditors bought in the property at a stated price. In the case of Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, the government took the position that the bid price of the bondholders at the foreclosure sale did not represent the fair market value of the property. However, these cases only establish a rule where creditors bid in the property at a foreclosure sale, not where the property is bought for cash at a free and open sale, although it was a foreclosure sale, when the creditors do not bid in the property.

The case of Baetjer v. U. S., 1 Cir., 143 F.2d 391, is not applicable here as it was a condemnation case and the particular points relied upon by plaintiff were merely dictum and not decisive of the court's decision. The case of Heiner v. Crosby, 3 Cir., 24 F.2d 191, is not in point because the property being evaluated there was shares of corporate stock which were dealt in on a regular exchange. The plaintiff cited the Gift

Tax Regulation 108, Section 86.19(a) in an attempt to show the basis of market value, but gift tax regulations are inapplicable to income tax cases.

It seemed to this court that all expert witnesses for both sides were well qualified to testify to the fair market value of the island. There is no rule of law defining how much a witness shall know concerning property before he may be permitted to give an opinion of its value. All that is required is that he must have some acquaintance with it sufficient to form an estimate of its value; and then it is for the Court to determine how much weight to attach to his estimate. Bedell v. Long Island Railroad Co., 44 N.Y. 367, 370.

Considering the reasons for the sale, the fact that it was a voluntary foreclosure sale, the fair market value of the property as of December 8, 1933 was approximately the figure for which the property was sold, that is $240,500.

It is apparent from the foregoing that plaintiff has failed to bring himself within the terms of the reorganization statute or to meet the burden of proof by evidence showing that the market value was higher than the actual selling price at the foreclosure sale. It is therefore

Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the defendant and against the plaintiff. Each party to pay its own cost.