**MDS ASSOCIATES, LIMITED, Partnership, and F. Gregg Bemis, Jr., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 93–429C.**

United States Court of Federal Claims.

May 27, 1994.

Hugh V.A. Starkey, Boston, MA, for plaintiffs.

Edward H. Rice, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. John Fargo and Mavis K. Lee, Dept. of Justice, of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion for partial summary judgment and plaintiffs cross-motion for leave to amend the complaint to add a party plaintiff.* Defendant moved to exclude from the case any issue of patent infringement by the Government prior to June 29, 1987.

### FACTS

The following facts are undisputed, unless otherwise noted. On August 19, 1970, the United States Patent and Trademark Office (the "PTO") received Application No. 65,228 from Robert M. O'Hagan, Joseph F. De Spautz, James E. Carroll, Jr., and Richard H. Sorensen, as inventors. The inventors assigned the application of their invention to Marine Digital Systems, Inc. ("Marine Digital"), on December 16, 1970. Mr. O'Hagan, as President of Marine Digital (who was also a co-inventor), entered into an assignment on December 22, 1970, on behalf of the corporation, whereby Marine Digital assigned its rights in the above application to State Street Bank and Trust Company as collateral for a loan in the amount of $250,000.00 secured by the Small Business Administration (the "SBA"). Later, Marine Digital became insolvent, defaulting on its SBA-secured loan, leaving a remaining balance of $193,533.00.

State Street Bank and Trust Company assigned its rights in the application and resulting patent to the SBA effective on July 17,

---

* Since the court prematurely granted plaintiff's motion to amend, the issue will be addressed in part III of this order. Due to the extensive involvement of F. Gregg Bemis, Jr., in the case, the court refers to Mr. Bemis by name, rather than by the designation "plaintiff," in order to avoid confusion. For the most part, the court refers to "plaintiff" in the singular, since MDS Associates Limited Partnership was the sole plaintiff until the motion to amend was granted.

1972, and March 5, 1981. Patent No. 3,737,-902 ("the '902 patent"), entitled "COLLISION AVOIDANCE SYSTEM PROVIDING A VECTOR SIGNAL REPRESENTATIVE OF THE DISTANCE AND BEARING BETWEEN A PRIME VEHICLE AND TARGET OBJECT AT A PREDICTED CLOSEST POINT OF APPROACH THEREBETWEEN," issued from the above application on June 5, 1973.

F. Gregg Bemis, Jr., a former shareholder and director of Marine Digital, approached Mr. John Clark, an SBA loan officer, by letter dated May 22, 1980, with an offer to purchase the '902 patent "for $100.00 cash plus ⅓ of all receipts ... [until] the S.B.A. [ ] received back its full exposure," at which time the SBA share would decrease to 10 percent. The SBA entered into an agreement with Mr. Bemis on March 11, 1981. Under the agreement the patent was assigned from the SBA to Mr. Bemis, entitling the SBA to $1,000.00 and one third of "future net receipts," including "earnings, royalties, litigation recoveries and all other income emanating from the ownership and use of the Patent until SBA is paid $270,000 or until the Patent expires, whichever comes sooner." Mr. Bemis also agreed to report to the SBA on February 28 and August 31 of each year his income and reasonable expenses related to ownership of the patent. The SBA subsequently received no monies resulting from the agreement.

On August 29, 1986, Mr. Bemis entered into an exclusive license agreement with Mr. O'Hagan, the former President of Marine Digital and co-inventor, whereby Mr. O'Hagan agreed to pay Mr. Bemis 51 percent of the "Gross Receipts" received by O'Hagan or any sublicensee from the '902 patent; the agreement was subject to the SBA's above-mentioned rights. Paragraph 6 of this agreement specifically assigned to Mr. O'Hagan the right to file suit for recovery of damages and profits related to past or future infringement of the '902 patent.

The following year, on June 9, 1987, Mr. Bemis assigned his interest in the '902 patent to MDS Patent Corp., a Massachusetts corporation. This assignment was effective as of June 29, 1987, the date on which MDS Patent Corp. was incorporated, and was subject to the exclusive license agreement entered into by Messrs. Bemis and O'Hagan on August 29, 1986. Mr. Bemis was the president, sole director, and sole shareholder of MDS Patent Corp. This assignment was recorded in the PTO on July 7, 1987.

On June 19, 1987, a notary public notarized a "Patent License" agreement entered into between MDS Patent Corp. and plaintiff MDS Associates Limited Partnership ("plaintiff MDS Associates"), which also was effective as of June 29, 1987. This license was recorded in the PTO on July 7, 1987. Mr. Bemis signed this agreement as the President of MDS Patent Corp., an entity that would not exist for another ten days.

Plaintiff MDS Associates, a Massachusetts limited partnership, also was formed on June 29, 1987. Mr. O'Hagan and Mr. Sorensen, another co-inventor of the '902 patent, are the two partners that comprise plaintiff MDS Associates. This license agreement also was subject to the August 29, 1986 exclusive license agreement and an amendment to that agreement dated June 29, 1987. The June 29 amendment substituted for Messrs. Bemis and O'Hagan their business entity counterparts, while ratifying the earlier exclusive license agreement which remained "in full force and effect."

On October 29, 1987, MDS Patent Corp. and plaintiff MDS Associates jointly filed an administrative claim against the United States Department of the Navy (the "Navy claim"). Two weeks later, on November 13, 1987, they jointly filed another claim involving air traffic control and Coast Guard systems against the United States Department of Transportation (the "DOT claim"). The Navy denied the Navy claim in two different letters dated June 24 and 25, 1993. The DOT claim was denied, as far as it related to air traffic control systems, in a letter dated March 9, 1988. The DOT claim is still pending with respect to Coast Guard systems.

On December 31, 1990, MDS Patent Corp. was dissolved by the Commonwealth of Massachusetts. Plaintiff MDS Associates filed the instant action on July 9, 1993. Thereaf-

ter, plaintiff sought to add Mr. Bemis as a party plaintiff. *See supra* note *.

## DISCUSSION

Defendant moves for partial summary judgment on the basis that the conveyance instruments failed to deliver to plaintiff MDS Associates any right to assert past infringement prior to June 29, 1987, the date on which plaintiff MDS Associates acquired a license in the subject patent. Alternatively, defendant argues that if such a right was conveyed, it could not be asserted against the United States under the Assignment of Claims Act of 1940, 31 U.S.C. § 3727 (1988) (the "Act").

### I. *Alleged faulty conveyance*

Defendant notes that express language must be used to assign the right to sue for past infringements, rather than inferential language used in a general assignment agreement. *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 n. 7 (Fed.Cir.1991). First, defendant argues that the 1987 amendment to the August 1986 exclusive license agreement, which substituted Mr. Bemis' alter-ego corporation, MDS Patent Corp., for Mr. Bemis and plaintiff MDS Associates for Mr. O'Hagan, could not have transferred the right to seek damages for past infringement to plaintiff MDS Associates. According to defendant, the 1987 amendment did not transfer all of the original rights conveyed in the 1986 license, because MDS Patent Corp., as substituted licensor, never held the right to seek damages for past infringement that Mr. Bemis possessed in 1986 when he entered into the license agreement. Therefore, MDS Patent Corp. could not have licensed that right to plaintiff MDS Associates.

Second, defendant asserts that the only instrument that purported to assign patent rights from Mr. Bemis to MDS Patent Corp. was the June 9, 1987 assignment recorded in the PTO on July 7, 1987. This assignment failed to include the required express language conveying the right to seek recovery for infringement. Further, the amendment to the 1986 exclusive license agreement did not transfer to MDS Patent Corp. the right to seek redress for past infringement.

The court agrees with plaintiff's analysis that the original August 1986 exclusive license agreement, which expressly conveyed the right to seek recovery for past infringement, when examined along with the June 29, 1987 amendment to that agreement, transferred to plaintiff MDS Associates the right to recover damages for past infringement. As described by plaintiff, the 1987 amendment was akin to a "novation and substitution of parties," rather than a strict conveyance, which would require an express transfer of infringement rights. Because the 1987 amendment specifically stipulated that the prior exclusive license agreement of August 29, 1986, was "ratified and remained in full force and effect," plaintiff MDS Associates received the right to bring suit for past and future infringement of the '902 patent as set forth in ¶ 6 of the exclusive license agreement. Prior to the amendment, this right was possessed by Mr. O'Hagan.

Plaintiff explains that the June 9, 1987 assignment from Mr. Bemis to MDS Patent Corp. and the June 19, 1987 license from MDS Patent Corp. to plaintiff MDS Associates were recorded in the PTO. The June 9, 1987 assignment referred to the 1986 exclusive license agreement, while the June 19, 1987 license referred to both the 1986 exclusive license agreement and the 1987 amendment. This recordation provided notice to and prevented a subsequent purchaser from obtaining bona fide purchaser status from MDS Patent Corp. by operation of 35 U.S.C. § 261 (1988) (unless recorded within three months, an assignment is void against a subsequent purchaser). Therefore, these documents recorded with the PTO provided notice of the interests in the '902 patent and need not have contained an express grant of the right to seek damages for past infringement, because that right already had been accomplished by the amendment to the exclusive license agreement.

### II. *Assignment of Claims Act*

Defendant alternatively argues that if plaintiff MDS Associates did obtain the right to pursue recovery for past infringements, the Act prevents the assertion of any pre-June 29, 1987 infringement against the Gov-

ernment by prohibiting the "transfer or assignment of any part of a claim against the United States Government or of an interest in the claim...." 31 U.S.C. § 3727. The effect of this provision is that the transfer of such a claim is invalid against the Government. 31 U.S.C. § 3727(b) ("[a]n assignment may be made only after...."). While the statute sets forth specific procedures for avoiding its effect, the only exclusion is for assignments made to a financing institution. 31 U.S.C. at § 3727(c).

### 1. Estoppel or laches

■ First, plaintiff MDS Associates contends that defendant should be barred from asserting the Act by laches or estoppel. Because defendant first raised the defense of the Act in its answer to plaintiff's complaint, even though it could have done so up to six years prior during the pendency of plaintiff's administrative claims, plaintiff argues that either defendant should be estopped from asserting the Act or that laches should apply against defendant.

Equitable estoppel does not apply against the Government as it applies against private litigants. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 2468–69, 110 L.Ed.2d 387 (1990). The Supreme Court confined the doctrine, as potentially applicable to the Government, to acts of "affirmative misconduct." *Id.* at 421–23, 110 S.Ct. at 2469–71. Plaintiff alleges that the Government merely failed to assert defenses that it had available, which does not approach "affirmative misconduct." The Supreme Court has reversed lower court findings of equitable estoppel against the Government in every case that it has reviewed. *Id.* at 422, 110 S.Ct. at 2470. While the Court noted that the inquiry into what constitutes "affirmative misconduct" is not a clear one, *id.* at 423, 110 S.Ct. at 2470–71, there is no allegation of any affirmative conduct on the Government's part in this case. Therefore, no basis exists upon which equitable estoppel could apply.

■ Likewise, laches does not apply. The Government has no obligation to raise any defenses until a suit is filed. In the instant case, defendant raised defenses in its answer to plaintiff's complaint. Plaintiff cannot show that defendant unduly delayed in raising defenses. Therefore, there is no basis to apply laches against the Government.

### 2. Application of the Act in patent cases

■ The Act has been interpreted as applying to assignments in patent cases only with respect to the right to recover for past infringements of the patent. *Foster v. United States,* 230 Ct.Cl. 938, 1982 WL 25282 (1982). Regarding the Act's predecessor statute, 31 U.S.C. § 203, the Supreme Court set forth the following purposes for the Anti–Assignment Act: 1) to prevent the trafficking of claims by persons of influence who might improperly urge them upon officers of the Government; 2) to prevent the potential of multiple payment of claims by the Government, to eliminate the potential necessity of reviewing any alleged assignments, and to allow it to deal solely with the original claimant; and 3) to preserve the Government's defenses against the transferor, which may be inapplicable to a transferee. *United States v. Shannon,* 342 U.S. 288, 291–92, 72 S.Ct. 281, 283–84, 96 L.Ed. 321 (1952).

The first purpose does not apply in the existing case. There has been no allegation concerning trafficking of claims. Plaintiff notes that all of the parties have possessed interests in the '902 patent from its inception and, further, that all of the claims relate to one single patent.

As for the second purpose, defendant argues that, absent the Act, the Government could have been subject to multiple liability from the individuals and their alter-ego entities. Defendant complains that the Government should not be required to sort through what it earlier termed "the confusing and circuitous assignment history of the '902 patent." Def's Br. filed Dec. 14, 1993, at 13–14. Plaintiff counters that defendant's opposition to adding Mr. Bemis as a party plaintiff would encourage multiple litigation by forcing him to file his own suit against the Government.

No likelihood of multiple liability lurks in the present case, since all potential plaintiffs desire to assert their claims in this suit and

all of the conceivable plaintiffs are original claimants. In addition, the court already has reviewed and assessed the assignment history of this case.

Finally, the third purpose appears inapplicable. Defendant asserts that the Act may preserve defenses against Mr. Bemis that may not apply to Mr. O'Hagan or plaintiff MDS Associates—specifically, a potential set-off or counterclaim against Mr. Bemis based on his agreement with the SBA. Plaintiff rejoins that the Government loses no defenses in that plaintiff MDS Associates became a licensee subject to the agreement between Mr. Bemis and the SBA. Therefore, because plaintiff MDS Associates entered the license subject to the SBA's rights, the Government has lost no defense.

The exclusion of Mr. Bemis is contrary to the third purpose of the Act: Mr. Bemis, a transferor, would not be a party to the existing action. The purposes of the Act would be adhered to more closely by allowing Mr. Bemis to become a party plaintiff. The issue of adding Mr. Bemis as a party plaintiff will be addressed more fully in part III.

In *Rel–Reeves, Inc. v. United States*, 221 Ct.Cl. 263, 606 F.2d 949 (1979), the Court of Claims rejected the notion that only involuntary transfers fall outside of the Act. The court stated that such a notion "favors form over substance and if adopted would mark a return to the mechanical application of the Act that was in vogue over 100 years ago." 221 Ct.Cl. at 273, 606 F.2d at 955. In making a determination whether the Act would apply, the court determined that "a more reasoned approach" would be to consider the types of assignments that the Act sought to prevent. *Id.* The court quoted from the trial court opinion in the *Foster* case rejecting the voluntary/involuntary distinction. The trial court noted that " '[t]ransfers by devise or inheritance and transfers to successor corporations, are voluntary assignments....' " that fall outside of the Act because they do no injustice the goals of the Act. *Id.* (citation omitted).

Plaintiff argues that conveyances between related parties should not be proscribed by the Act. *Kingan & Co. v. United States*, 71 Ct.Cl. 19, 44 F.2d 447 (1930), supports plaintiff's argument. In *Kingan* the court found it significant that the equitable ownership of a claim remained with the same individuals or stockholders after a reorganization. 71 Ct.Cl. at 29, 44 F.2d at 451. The court determined that this holding would not result in a plaintiff's perpetuating a fraud upon the Government through such an assignment; on this basis plaintiff avoided operation of the Act. *Id.* In the case at bar, Mr. O'Hagan received the right to recover for patent infringement when Mr. Bemis and he entered into the exclusive license agreement on August 29, 1986. The following year, on June 29, 1987, Mr. O'Hagan transferred this right to plaintiff MDS Associates, his alter-ego partnership, by virtue of the amendment to the agreement. Thus, at least from August 19, 1986, until the present, the same individual or partners possessed the equitable ownership of the claims for purposes of infringement. The inter-esse nature of the transfers perpetrated no fraud upon the Government; and, as found in *Kingan*, the Act does not operate under the current set of facts.

### III. *Addition of Mr. Bemis as a party plaintiff*

Defendant argues that whether or not Mr. Bemis is added as a party plaintiff, no claim lies for any infringement that occurred before June 29, 1987. Under defendant's analysis, prior to June 29, 1987, MDS Patent Corp. never possessed the right to sue for past infringement; consequently, Mr. Bemis, as the successor to the dissolved corporation, could have obtained only the right to any claims that MDS Patent Corp. could have asserted based on the 1987 amendment. Only Mr. Bemis would be able to assert claims accruing after June 29, 1987.

A significant problem with defendant's analysis is that if the claims for past infringement cannot be assigned, they would have remained with Mr. Bemis or would have been transferred to MDS Patent Corp. and returned to Mr. Bemis upon dissolution of the corporation. Under this analysis he would have the right to assert claims for infringement accruing prior to June 1987.

Unless Mr. Bemis is added as a party plaintiff, plaintiff MDS Associates would be entitled to assert only post-August 29, 1986 claims. If Mr. Bemis is added, then plaintiffs could assert claims dating back to October 29, 1981, for the Navy claim, and November 13, 1981, for the DOT claim. These dates apply based on the filing dates of the administrative claims and the operation of 35 U.S.C. § 286, 28 U.S.C. § 2501 (1988 & Supp. IV 1992). Under 35 U.S.C. § 286, the six-year statute of limitations is tolled for six years prior to the filing of plaintiff's and MDS Patent Corp.'s administrative claim and up to six years thereafter. No additional claims of infringement could accrue after June 5, 1990, the date on which the '902 patent expired.

▋ Defendant contends that the effect of the six-year statute of limitations based on 28 U.S.C. § 2501 is that all claims of infringement prior to June 29, 1987, expired on June 29, 1993, ten days before plaintiff lodged its complaint. Thus, defendant argues that no one can assert these claims against the Government. If the addition back of Mr. Bemis relates to the time of the filing of the complaint, this relation back is to a date after the statute of limitations expired. Moreover, according to defendant, the administrative claims filed jointly by MDS Patent Corp. and plaintiff MDS Associates failed to claim compensation for infringements occurring before June 29, 1987. Even if such compensation were claimed, defendant maintains that under *Custer v. United States*, 224 Ct.Cl. 140, 622 F.2d 554 *cert. denied*, 449 U.S. 1010, 101 S.Ct. 565, 66 L.Ed.2d 468 (1980), such assertion would have been ineffective because neither MDS Patent Corp. nor plaintiff MDS Associates was the lawful owner of the pre–1987 claims.

Plaintiff responds that the statute of limitations was tolled by the joint filing of the administrative claim by the actual owner of the '902 patent, MDS Patent Corp., and the licensee, plaintiff MDS Associates. As noted by plaintiff, *Custer* is distinguishable because in that case a party who transferred his right to seek recovery for infringement to a third party filed the administrative claim alone, whereas in this case the lawful owners filed

jointly. Upon filing administrative claims, the statute of limitations is tolled for up to six years under 35 U.S.C. § 286. While the administrative claims did not give the dates for which plaintiff sought compensation for infringement, the claims stated that compensation was sought under section 286. *See* the Navy claim dated October 29, 1987, at 2, and the DOT claim dated November 13, 1987, at 2. The statute sets forth the six-year period. The claim for pre-June 29, 1987 infringement was implied by reference to section 286. Thus, the agencies were given indirect notice of the period for which plaintiff sought compensation for infringement. Also, as discussed above, the transactions did transfer the right to sue for past infringements. No tolling or transaction therefore prevents the assertion of plaintiffs' claims.

▋ Finally, plaintiff argues that the addition of Mr. Bemis to the action relates back to the filing of the suit. In *Baldwin Park Community Hosp. v. United States*, 231 Ct. Cl. 1011, 1982 WL 25837 (1982), the Court of Claims rejected the relation back determination of *Custer*. *Id.* at 1012. Regarding a rule identical to present RCFC 15(c), the court noted that an amended pleading adding plaintiffs appropriately related back to the date of filing where it "relates to the same conduct, transaction, or occurrence set forth in the original pleading." *Id.*

It is undisputed that the present amendment relates to the "same conduct, transaction, or occurrence." Defendant cannot show that prejudice will result by adding Mr. Bemis as a party plaintiff. Defendant has known of Mr. Bemis and his role in the existing controversy since the commencement of the action. Moreover, notice is not an issue because the underlying claims remain the same. Based on the binding precedent of *Baldwin*, the addition of Mr. Bemis relates back to the date of filing. As a result of the amendment, plaintiffs can sue for infringement dating from 1981.

## CONCLUSION

Accordingly, based on the foregoing,

IT IS ORDERED, as follows:

1. Defendant's motion for partial summary judgment is denied.

2. Paragraph 1 of the order entered on January 4, 1994, is vacated.

3. A status conference shall be held at 2:00 p.m. on Friday, June 24, 1994, in the National Courts Building, 717 Madison Place, N.W., Washington, DC. Counsel for plaintiffs shall notify the court at 202/219–9546 by June 20, 1994, if he wishes to participate by telephone conference call to be placed by the court. The parties shall be prepared to report on the progress of discovery and their settlement negotiations and propose a deadline for discovery.